**UNITED STATES of America, Appellee/Cross–Appellant,**

v.

**Cordell SPENCER, Appellant/Cross–Appellee.**

**Nos. 93–3052, 93–3074.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 11, 1994.

Decided June 17, 1994.

---

David Kagan–Kans, Washington, DC, appointed by the court, argued the cause, and filed the briefs, for appellant/cross-appellee.

Thomas J. Tourish, Jr., Asst. U.S. Atty., Washington, DC, argued the cause, for appellee/cross-appellant. With him on the briefs, were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Corbin A. Weiss, Asst. U.S. Attys., Washington, DC.

Before: MIKVA, Chief Judge, BUCKLEY and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The most serious issue presented in this case is whether, as the district court ruled, the career offender provisions of the Sentencing Guidelines are unconstitutional as applied to the defendant, Cordell Spencer.

Spencer was convicted, after a jury trial, of possession with intent to distribute cocaine base (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii)), and possession with intent to distribute a detectable amount of heroin (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)). Refusing to follow the Sentencing Guidelines, which placed Spencer's sentence in the 30–year–to–life–imprisonment range, the court sentenced Spencer to the mandatory minimum of 10 years' imprisonment.

## I

After receiving complaints about drug activity in an apartment at 640 Park Road in northwest Washington, D.C., a police officer patrolling the area investigated. He saw Spencer inside the apartment talking with another individual, described as an "unidentified white male." When Spencer spotted the officer, he closed the door. The officer questioned the "white male" about his presence in the apartment, but the record does not reveal the man's response. Within a few days, the officer obtained a search warrant. He went to the apartment, saw Spencer and Ronald Chapman there, and one hour later returned with two other officers to execute the warrant.

As the officers drove through a nearby alley, they noticed Spencer removing his left hand from the apartment door and carrying a set of keys in his right hand. Confronted by the officers, Spencer first said the keys were for his car and an apartment he rented elsewhere; he then changed his story, saying he found the keys in the hallway. According to Spencer, he had just been "passing through" the building. One of the keys fit the lock on the apartment subject to the warrant.

Inside the apartment the officers found Chapman, an inoperable .25 caliber pistol, three rounds of ammunition, 51 ziplock bags containing 6.69 grams of cocaine base, 11 bags containing .87 grams of heroin, many empty ziplock bags, a pager, a box of baking soda, and a strainer and spoon covered with cocaine and heroin residue. The apartment was filthy, and "look[ed] like nobody had lived in there ... maybe two or three months." The police recovered no personal possessions linking Spencer to the apartment. The lessee of the apartment, Sincera Boone, apparently lived elsewhere. At the time of his arrest, Spencer was carrying a pager and $111 in cash.

Charles Anderson, a friend of Spencer and a witness for the defense, testified that he was on the porch of a nearby home (646 Park Road) playing with two puppies for about two hours before the police arrived. He asserted that during those two hours, Spencer was sitting by a tree, where he remained until the officers grabbed him and threw him against a car. Anderson heard Spencer threaten to sue the police. He saw the officers take several keys from Spencer.

Harveeta Tucker, another defense witness who knew Spencer, testified that when the police arrived, she was in the front yard of her home at 648 Park Road. She swore that Spencer had been near the tree for an hour and that the police arrested him there after bringing Chapman out of the apartment. She too heard Spencer threaten to sue the police. Although Anderson testified to seeing Tucker, Tucker did not see Anderson and did not remember any puppies. She described a wooden wall with a small opening separating the porches at 646 and 648 Park Road. On cross-examination Tucker admitted that there was a pending armed robbery charge against her. She denied harassing police officers making arrests in her neighborhood, a statement contradicted in the government's rebuttal by the investigating officer, who recounted Tucker's throwing bottles at police officers making other drug arrests in the neighborhood.

## II

■ Spencer's list of alleged trial errors begins with the prosecutor's opening statement. The prosecutor described the pre-search events to the jury, reciting Spencer's status as a "target" of the search warrant; the officers' expectations that they would find him at the apartment; and the investigating officer's "prior encounters" with him. These remarks did not, as Spencer believes, suggest that the government had evidence of Spencer's drug dealing beyond the evidence

to be introduced. *Compare United States v. Foster,* 982 F.2d 551, 555 (D.C.Cir.1993); *United States v. Perholtz,* 842 F.2d 343, 360 (D.C.Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). What the prosecutor indicated the government would prove, the government did prove. The investigating officer testified that he had observed Spencer in the apartment twice before searching it. He gave Spencer's description to the other officers on the day of the search. Of course he expected to (and did) find him close to the apartment. In these respects, Spencer was indeed a target of the investigation, which included the search.

■ The next item on Spencer's list is the district court's allowing the prosecutor to impeach defense witness Tucker with the pending armed robbery charge against her. We hold that the court acted within the limits of its discretion. Cases decided before adoption of the Federal Rules of Evidence generally forbid attacks on a witness' credibility merely on the basis that the witness had been arrested or charged. An indictment or an arrest is not, in itself, proof of the underlying criminal act. "Only a conviction," the Supreme Court wrote in *Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948), "therefore, may be inquired about to undermine the trustworthiness of a witness." Rule 609, FED.R.EVID., as amended in response to *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989), now governs the impeachment of defense and prosecution witnesses with prior convictions. This "general attack on the credibility of the witness," *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), however, is not the only permissible method. A "more particular" attack occurs when the witness is impeached for bias. *Id.* Although not specifically mentioned in the Rules, proof of bias—that is, "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party"—is "almost always relevant." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). It is common for the defense to cross examine *prosecution* witnesses about charges pending against

them; that they might be influenced by "self-interest", by their desire to please the government, is fairly apparent. *See* JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE § 39, at 133 n. 22 (4th ed. 1992). This court also permitted, before and after adoption of the Rules, the prosecution to impeach defense witnesses for bias by showing charges against them, subject always to the requirement, now embodied in Rule 403, that the probative value of this evidence is not substantially outweighed by danger of unfair prejudice. *See United States v. Maynard,* 476 F.2d 1170, 1174 (D.C.Cir.1973); *United States v. Robinson,* 530 F.2d 1076, 1080 (D.C.Cir.1976); *cf. United States v. Anderson,* 881 F.2d 1128, 1138 (D.C.Cir. 1989); *see also United States v. Senak,* 527 F.2d 129, 147 (7th Cir.1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976). Here the district court concluded that Tucker's bias was a "legitimate" subject of inquiry. We see no basis for disturbing the ruling. The court carefully reviewed our decisions in *Maynard* and *Robinson* and analyzed the government's proffer in light of Tucker's history of harassing the police. It may be that, in general, a pending criminal charge against a defense witness would be as likely to move the witness to color his testimony for the prosecution as against it. *Cf. Davis v. Alaska,* 415 U.S. at 311, 94 S.Ct. at 1107. In this case, however, other evidence showed Tucker's antipathy toward law enforcement and the court properly determined that the jury could hear about a possible source of her hostility.

■ There is nothing to Spencer's additional claims that the court improperly questioned Tucker and gave an erroneous jury instruction. Spencer raised neither objection at trial and he cannot satisfy the "plain error" standard. FED.R.CRIM.P. 52(b). Trial judges may question witnesses. FED.R.EVID. 614(b). While it is often said the judge may not assume the role of an advocate, *e.g., United States v. Norris,* 873 F.2d 1519, 1526 (D.C.Cir.), *cert. denied,* 493 U.S. 835, 110 S.Ct. 113, 107 L.Ed.2d 75 (1989), the judge in this case did no such thing. Most of the court's questions to Tucker concerned details, such as how long Spencer had been

under the tree, the species of the tree and whether Spencer stood or sat. The balance of the court's questions sought to clarify why Tucker did not remember seeing Charles Anderson, who said he was on the porch next door for two hours. If anything, the court assisted the defense by adducing the fact that there was a wall between the two porches with only a small opening.

■ As to the jury instructions, the court described the prosecution's theory of the case and the defense's, and then told the jury that in order to decide which theory of the case was correct, it must decide whether the officers were lying or whether Tucker and Anderson were lying. The instruction did not, as Spencer contends, plainly shift the burden of proof to the defense. A few moments earlier, the court instructed, "As somebody or both lawyers said, somebody is lying. It is perfectly obvious." The court immediately followed up with an explanation of the burden of proof: "The defendant is not required to prove his innocence. He doesn't have to prove anything. He can sit there and wait for the government to prove its case." The court also explained that the government had the burden of proving each element of the offense beyond a reasonable doubt. Given the conflicting stories about Spencer's whereabouts at the time of his arrest, the defense's repeated contention that the police were lying, and Spencer's failure to object, the court's charge did not rise to the level of plain error. The jury could not have construed the court's remark to mean that the defendant had the burden of proof, unless it ignored the court's other instructions. *Cf. United States v. Alston,* 551 F.2d 315, 318–19 (D.C.Cir.1976).[1]

## III

■ Spencer is a four-time loser. Before this trial, he had been convicted three times in the District of Columbia Superior Court: in 1986 for distributing heroin, in 1987 for attempting to distribute heroin, and in 1991 for attempting to possess cocaine with intent to distribute. For his 1986 and 1987 crimes, he was sentenced under the "Youth Rehabilitation Act," D.C.CODE § 24–803; for his 1991 crime, he received 18 months' probation, a sentence he was serving when he committed the offenses in this case.

Because Spencer stood convicted of possessing, with intent to distribute, cocaine base in violation of 21 U.S.C. § 841(a)(1), because the amount was more than 5 grams and because he had at least one prior conviction under local law "relating to narcotic drugs," his statutory sentence was "not … less than 10 years and not more than life imprisonment" (21 U.S.C. § 841(b)(1)(B)(iii)).

Courts must follow the Sentencing Guidelines to determine where in this range—10 years to life—a defendant like Spencer should be placed. 18 U.S.C. § 3553(b). Spencer's presentence report treated him as a "career offender" under U.S.S.G. § 4B1.1. *See* 28 U.S.C. § 994(h). This had the effect of boosting his offense level from 26 to 37, increasing his criminal history category from IV to VI, and raising his sentencing range to 30 years to life.

Thirty years' imprisonment is, by anyone's lights, a severe sanction. To the district court, it was too severe. Nevertheless, the court rejected defense counsel's plea that it

---

1. Spencer complains about the following remarks of the prosecutor, during closing argument, regarding the "white male" the investigating officer encountered when he first arrived at the apartment: "What do you think he asked the white male? He did not have a search warrant at that time. He's investigating drug distribution as part of his duties in the Fourth District vice unit. What do you think he asked the white male coming out of the apartment? What time is it? Or what are you doing there? What are you doing at this apartment? That was the beginning of the investigation."

As the government concedes, one might infer from these remarks that the officer asked the white male about drug dealing and, perhaps, that the white male answered that Spencer was selling drugs. Brief for Appellee and Cross-Appellant at 22. But that is not the only possible inference and we cannot simply assume the jury made it. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 646–47, 94 S.Ct. 1868, 1872–73, 40 L.Ed.2d 431 (1974). There was testimony that the officer had asked the white male "why he was there." The prosecutor was entitled to mention this in closing argument, and to ask the jury to credit the officer's testimony. The prosecutor's technique may have created some ambiguity but it did not create a reversible error.

depart from the Guidelines and give Spencer less time, as U.S.S.G. § 4A1.3 authorizes. *United States v. Spencer*, 817 F.Supp. 176, 179–80 (D.D.C.1993). (We will return to this subject in a moment.) Instead of then following the Guidelines, the court sentenced Spencer to the minimum statutory term of 10 years' imprisonment. The court ruled that "a thirty-year sentence for possessing less than eight grams of illegal narcotics with intent to distribute violates the constitutional protections of due process under the Fifth Amendment, Article III, and the Eighth Amendment." 817 F.Supp. at 184. From this ruling the government cross-appealed.

As to the Eighth Amendment, our decision in *United States v. Garrett*, 959 F.2d 1005, 1009 (D.C.Cir.1992), sustained the 30–year Guideline sentence imposed in that case on a career offender, holding that the length of the sentence was not cruel and unusual punishment, particularly in view of *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam), which upheld a 40–year sentence of imprisonment for distributing marijuana and possessing 9 ounces of the drug with intent to distribute it. *See also Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The district court distinguished *Garrett* on the ground that the criminal there had a more extensive and violent criminal career than Spencer. But the *Garrett* opinion did not turn on that consideration, indeed did not even mention any specifics regarding the prior offenses except to say that Garrett had "two prior felony drug convictions." 959 F.2d at 1009. The district court's distinction cannot, in any event, survive *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which sustained, against an Eighth Amendment challenge, a life sentence imposed pursuant to state law on a recidivist whose three offenses consisted of obtaining $120.75 by false pretenses, passing a $28.36 false check, and fraudulently using a credit card to obtain $80 worth of goods and services.

■■■■ The district court thought it critical that a legislature or a judge determined the length of the sentences imposed in *Rummel, Hutto,* and *Harmelin,* while here the 30–year period was chosen by the Sentencing Commission, which "obviously is not a legislative body" and which has "interfere[d] with the power of federal courts to exercise their historic sentencing function." 817 F.Supp. at 181. The latter point, on which the court apparently relied for its Article III ruling, is scarcely worth discussing in view of *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).[2] As to the court's other point about the Commission, it is true that the Supreme Court's opinions in *Rummel, Hutto,* and *Harmelin* stress the subjective nature of comparative sentencing and the consequent deference owed to legislative judgments. *See Hutto,* 454 U.S. at 373, 102 S.Ct. at 705; *Rummel,* 445 U.S. at 275–76, 100 S.Ct. at 1139–40. But Spencer's Guideline sentence reflects Congress's judgment as much as the sentences in those state cases reflected the state legislature's. Congress directed the Commission, in 28 U.S.C. § 994(h), to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for those individuals who fall into the "career offender" category—in Spencer's case, life imprisonment. On the assumption that two of Spencer's prior felonies place him within § 994(h)(2)(B)'s definition of a career offender, of which more hereafter, the Commission did precisely what Congress instructed. Indeed, § 994(h) "left the Sentencing Commission precious little room to maneuver." *United States v. Norflett,* 922 F.2d 50, 53 (1st Cir.1990); *see also United States v. Garza,* 999 F.2d 1048, 1051–52 (6th Cir.1993).

■■■ The district court's other rationale, on which it seemed to rest its due process ruling, was that the Commission implement-

---

2. Congress has the unquestioned power to determine sentences for federal crimes. No one would maintain that in doing so Congress unconstitutionally invades the province of the federal courts. If Congress has validly delegated to the Sentencing Commission the power to develop proportionate penalties for federal criminals, as *Mistretta* held (488 U.S. at 371–79, 109 S.Ct. at 654–58), it follows that the Commission cannot be invading the judicial authority when it carries out this legislative directive.

ed § 994(h) through U.S.S.G. § 4B1.1 in a "wooden" and "blind" manner, treating all "career offenders" alike, without regard to their individual circumstances. 817 F.Supp. at 178 n. 9, 182. Other courts of appeals have rejected similar "due process" challenges to § 4B1.1. *See United States v. John,* 936 F.2d 764, 766 n. 2 (3d Cir.1991); *United States v. Jones,* 907 F.2d 929, 930 (9th Cir.1990); *United States v. Green,* 902 F.2d 1311, 1313 (8th Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990); *United States v. Pinto,* 875 F.2d 143, 144–46 (7th Cir.1989). If the district court were right, if defendants had some due process right to individualized sentencing, all mandatory sentencing provisions would be unconstitutional, including the provision under which the court sentenced Spencer to a 10–year mandatory minimum term of imprisonment. Yet mandatory sentences have been part of the federal criminal law since 1790 and, wisely or not, by 1991 there were no less than 100 separate federal mandatory minimum penalty provisions. *See* UNITED STATES SENTENCING COMMISSION, SPECIAL REPORT TO CONGRESS: MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 5–15 (1991).

■ Furthermore, the Guidelines may be more flexible than the district court supposed. The policy statement in U.S.S.G. § 4A1.3, which is authoritative (*Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992)), permits downward departures "when criminal history category VI, assigned pursuant to the career offender guideline, significantly overrepresents the seriousness of a defendant's past criminal conduct and the likelihood of recidivism." [3] *United States v. Beckham,* 968 F.2d 47, 54 (D.C.Cir.1992). The district court recognized as much, but thought that Spencer's circumstances did not warrant special treatment. *Spencer,* 817 F.Supp. at 179. Ordi-

narily this would be the end of the matter; a sentencing court's discretionary refusal to depart downward is not reviewable on appeal. *Beckham,* 968 F.2d at 53; *United States v. Hazel,* 928 F.2d 420, 424 (D.C.Cir. 1991). However, we may rule on Spencer's claim that the district court misconstrued the scope of its discretion under U.S.S.G. § 4A1.3. *See Beckham,* 968 F.2d at 53; *United States v. Ortez,* 902 F.2d 61, 63–64 (D.C.Cir.1990).

■ The Third and Fourth Circuits hold that departures under U.S.S.G. § 4A1.3 are not governed by 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 (policy statement), which limit departures to cases in which there is an "aggravating or mitigating circumstance of a kind, or to a degree" the Commission has not "adequately taken into consideration" in formulating the Guidelines. *United States v. Shoupe,* 988 F.2d 440, 444–47 (3d Cir.1993); *United States v. Pinckney,* 938 F.2d 519, 521 (4th Cir.1991); *but see United States v. Bowser,* 941 F.2d 1019, 1023–25 (10th Cir.1991). *Shoupe* viewed 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 as analytically distinct from U.S.S.G. § 4A1.3. In making the § 4A1.3 determination whether a defendant's criminal history category significantly overrepresents (or underrepresents) the seriousness of his past conduct and the likelihood he will commit crimes in the future, the sentencing court, *Shoupe* decided, 988 F.2d at 445, must take into account information, "including factors which the Commission may have otherwise considered in promulgating other provisions of the Guidelines." *Id.* at 447. Under *Shoupe,* factors such as age and immaturity at the time of the prior offenses may therefore be considered. *Id.*

Whether 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 are as restrictive as the Third and Fourth Circuits believed may be open to

---

3. The Commission's policy statement, U.S.S.G. § 4A1.3, says, in relevant part:

There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

doubt, as Judge Breyer persuasively demonstrated in *United States v. Rivera*, 994 F.2d 942, 946–50 (1st Cir.1993). *Shoupe* and *Pinckney* are, moreover, inconsistent with the Supreme Court's statement in *United States v. Williams*, — U.S. at —, —, 112 S.Ct. at 1117, 1118, that a court may depart from the sentencing range provided in the Guidelines "only" pursuant to 18 U.S.C. § 3553(b), a statement made in a case in which the district court had departed upward pursuant to § 4A1.3 of the Guidelines. In discussing § 4A1.3 after *Williams*, we cited 28 U.S.C. § 991(b)(1)(B), which states generally the Commission's purpose of "maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." *Beckham*, 968 F.2d at 54. The Supreme Court's statement about a sentencing court's authority in *Williams* does appear unnecessary to its decision, as the Third Circuit thought, *Shoupe*, 988 F.2d at 446 n. 9, but that may not be a fair characterization of what we said in *Beckham* about the Commission's authority. However, *Beckham*'s treating § 4A1.3 of the Guidelines as derived from 28 U.S.C. § 991(b)(1)(B), and by inference, from 28 U.S.C. § 994(f),[4] does not necessarily contradict *Shoupe* and *Pinckney*.

Two reasons make us reluctant to choose, in this case, between *Shoupe* and *Pinckney*, on the one hand, and the contrary decision of the Tenth Circuit in *Bowser*, on the other hand. First, it is unclear why the district court, having found that "Spencer's prior offenses, which were also relatively unaggravated, do not indelibly stamp him as a career offender," *Spencer*, 817 F.Supp. at 178, thought that it could not depart downward. Regardless whether *Shoupe* and *Pinckney*, or *Bowser* controlled, the Commission's commentary to § 4A1.3 itself "recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." Yet the district court thought it was "prohibited from taking into account the relatively minor nature of [Spencer's] prior convictions

or the extenuating circumstances." 817 F.Supp. at 183. The court did say that if Spencer were entitled to a departure a "significant majority of the defendants who come before this Court would be entitled to departure" (*id.* at 180). But the court appears to have directed its statement at *all* defendants, when it should have compared only career offenders whose sentences are dramatically increased as a result of their prior offenses. If the court had determined that Spencer's criminal history was so minor that it rendered his an "unusual" *career offender case*, we see no reason why the court could not invoke § 4A1.3 to depart downward. *United States v. Rivera*, 994 F.2d at 947. So far as we can tell, however, the court never made that determination.

Second, it is an open question whether on remand the court will get to the point of exercising or refusing to exercise its discretion to depart under § 4A1.3. At oral argument the question arose whether Spencer even qualified as a "career offender" in view of our recent decision in *United States v. Price*, 990 F.2d 1367 (D.C.Cir.1993). *Price* held that the Commission was not authorized under 28 U.S.C. § 994(h)(1)(B) to use a conspiracy, in violation of 18 U.S.C. § 371, to trigger sentencing under the career offender provisions, even though the objects of the conspiracy and the overt act consisted of possessing with intent to distribute drugs in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). 990 F.2d at 1368–69.

Section 994(h) provides in relevant part:

The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—

(1) has been convicted of a felony that is—

. . . .

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841) . . . ; and

---

4. Under 28 U.S.C. § 994(f), the Commission, in promulgating the Guidelines, must promote the

purposes set forth in 28 U.S.C. § 991(b)(1).

(2) has previously been convicted of two or more prior felonies, each of which is—

. . . .

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841). . . .

Here the district court said that two of Spencer's three prior convictions were "attempted distribution of heroin," and "attempted possession with intent to distribute heroin." *Spencer,* 817 F.Supp. at 178. While the court correctly noted that under the Sentencing Commission's definition of prior offenses, attempts count (U.S.S.G. § 4B1.2, application note 1), *Price* raises the question whether they may *properly* count in view of 28 U.S.C. § 994(h)(2)(B).[5] Spencer's prior convictions for attempts fit the description of a federal offense, but it is the one contained in 21 U.S.C. § 846, which makes attempts to commit certain offenses subject to the same punishment as the offense, rather than 21 U.S.C. § 841, as 28 U.S.C.

§ 994(h)(2)(B) seems to contemplate. *Compare Price,* 990 F.2d at 1369–70.

The issue whether in light of *Price* the Guidelines may properly place Spencer in the career offender category arose, as we have said, only in oral argument. The parties have not yet had a chance to address it in any comprehensive fashion. Since the case must be remanded for resentencing in any event, we should have the benefit of the district court's judgment, after full argument, before we consider this issue further.

The judgment of conviction is affirmed and the case is remanded for further proceedings in accordance with this opinion.

---

5. *Price* recognized that although the court's concern there was "only with § 994(h)(1)(B), . . . § 994(h)(2)(B) poses the same problem." 990 F.2d at 1369.