**UNITED STATES of America, Appellee,**

v.

**Derek D. RAWLINGS, Appellant.**

**No. 93–3188.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1995.

Decided Jan. 19, 1996.

Lisa B. Wright, Assistant Federal Public Defender argued the cause, for the appellant. A.J. Kramer, Federal Public Defender, was on the brief.

Judson E. Lobdell, Assistant United States Attorney, argued the cause, for the appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas C. Black and Cherry Marie Destura, Assistant United States Attorneys, were on the brief.

Before: GINSBURG, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

■ Appellant Derek D. Rawlings challenges his conviction on one count of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d) on the grounds that (1) the prosecutor improperly cross-examined Rawlings about his silence after he had been arrested and advised of his *Miranda* rights, (2) the court erroneously asked Rawlings during his direct examination whether police witnesses had "made up" their testimony and (3) the court's jury instructions were misleading. Because we conclude the trial court misinstructed the jury, we reverse the conviction and remand for a new trial.[1]

■ On appeal from a conviction, we must view the evidence in the light most favorable to the government, allowing it the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. *United States v. Sobin,* 56 F.3d 1423, 1425 (D.C.Cir.1995); *United States v. Butler,* 924 F.2d 1124, 1126 (D.C.Cir.), *cert. denied,* 502 U.S. 871, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991). So viewed the evidence reveals the following facts.

At about 9:00 a.m. on May 4, 1993, Washington Metropolitan Police Department Officers Franklin Crews and Robert Scippio

---

1. In light of this holding we need not address Rawlings's first two arguments for reversal. With regard to the second, however, we remind the district court that "overzealous quizzing by the judge ... [may cause] a breach of the atmosphere of judicial evenhandedness that should pervade the courtroom," *United States v. Barbour,* 420 F.2d 1319, 1321 (D.C.Cir.1969).

were patrolling near Fifth Street and Florida Avenue, N.E., when they received a radio alert for a black male wearing a blue and white sweat jacket and carrying a "Heineken" beer box in which was concealed a sawed-off shotgun. The officers searched the area in a patrol car until they spotted three men outside a convenience store, one of whom was wearing a blue and white jacket and holding a Heineken box. The officers parked the patrol car and got out to investigate. When Scippio approached the men and began to speak, the man holding the box ran off and Scippio gave chase. Neither Scippio nor Crews noticed what the other two men did then.

Scippio chased the man with the box through several alleys and over two fences. The first was a low "waist high" fence that each man jumped without difficulty. The second fence, however, was about six-feet high and the fleeing suspect was forced to throw the Heineken box to the other side before scaling the fence himself. He then ran off leaving behind the box and the shotgun.

Meanwhile, Crews had circled around the block and saw a man rounding the corner while removing a blue and white jacket. Crews shouted and gave chase but lost sight of the man after he turned into an alley. Officer Daniel Kapaska and his partner entered the same alley from the opposite direction and saw Rawlings running toward them either wearing or carrying a blue and white jacket.[2] Rawlings stopped when he saw the officers and they then arrested him. A short time later Crews and Scippio arrived and identified Rawlings as the man they had seen holding the Heineken box and had each chased. A laboratory analysis of the shotgun, which Scippio had retrieved, revealed a single fingerprint belonging to Rawlings.

Rawlings was indicted and tried on one count of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). At trial the defense theory was that Scippio and Crews mistakenly identified Rawlings as the man Scippio had chased. According to Rawlings, he left home for work around 8:00 a.m.

on May 4, carrying a blue and grey jacket, and fortuitously encountered two men he knew outside the store where the officers first saw him. One of the two, "Yarborough," asked Rawlings to "check out" a Heineken box they had. When Rawlings reached into the box he felt something "cold" and "hard" inside but "didn't really feel it long enough to exactly feel—to even know what it was." Appellant's Appendix (App.) tab B 192. Then Rawlings heard one of the other two men yell "police" and all three started running. Rawlings testified that he became "paranoid" and ran around the block toward his home while the other two "cut through the alley that's been mentioned." Id. at 175. On his way home he passed through a different alley where he was arrested by Kapaska and his partner.

At the close of a two-day trial Rawlings was convicted of possessing an unregistered firearm. He was sentenced to 57 months' imprisonment, followed by three years of supervised release, and a $50 assessment.

At trial the district judge interrupted Rawlings's testimony and the following exchange occurred:

> The Court: When you were running with the police after you, did you have to jump or climb over any fences?
>
> Rawlings: No, Sir.
>
> The Court: It didn't exist, no fence is there?
>
> Rawlings: I never went through an alley or anything until I got to 11th Street, the alley right next to my house, and there wasn't no fence.
>
> The Court: The officer made it all up?
>
> Rawlings: Yes, Ma'am—Yes, Sir.
>
> The Court: Okay.

App. tab B 196–97.

While charging the jury, the judge again focussed on the perceived inconsistency between the two sides' stories, characterizing them as "diametrically opposed" and instructing the jurors that they "had to decide what really happened." App. tab C 28. In his credibility instruction the judge again emphasized to the jurors the conflict he perceived and told them they had to resolve it:

2. Kapaska initially testified that Rawlings was wearing the jacket, Appellant's Appendix (App.) tab B 94, but later that it was in his hands, id. at 95, 99.

Now credibility, as I mentioned, I think, the word several times, is one of the most important functions that you perform. *In this trial, as in most trials, you hear one story from one set of witnesses and you hear the exact opposite from another set of witnesses.* In almost every trial that I have ever conducted that has been true. *You have to make a decision who is to be believed. Which side, which witnesses are telling the truth.* I have no legal magic, principles, as to how that is to be done. It is to be done on the basis of your experience in life, your common sense, *which story is more likely to be true than the other, which witness seems to be telling the truth and which one doesn't.* As I said, it goes strictly on the basis of experience and common sense.

*Id.* at 31–32 (emphasis added).

Later on in the charge the judge declared:

Now, that gets us to the last part of these instructions and that is the charge itself. The defendant has been charged by the grand jury, by indictment, with possession of an unregistered firearm. There are three parts, three elements to this. *For our present purpose the first is the most important, although you must consider all three. But the first, which I will give you right now, is the most important.* Namely, the Government must prove as the first element that the defendant possessed this firearm, that is a short barrel or sawed-off shotgun.

App. tab C 35 (emphasis added). After instructing the jurors at some length on the "important" element of possession, the judge continued:

*Now the other two elements are not— they must be proved, but I suggest to you they are probably not as important in the context of this case.* The government must prove as a second element that if the defendant had possession he had so knowingly, that is he was aware of his possession and didn't have possession out of mistake or somebody put it in his pocket or that kind of thing.

The third element that the government must prove beyond a reasonable doubt is that the shotgun had not been registered by him as required by law. We had testimony it was not registered.

App. tab C 37 (emphasis added).

■ Rawlings contends the cited jury instructions constitute grounds for reversal. Because Rawlings did not object to the instructions we review them under the plain error standard, which generally "requires us to determine (1) whether there is unwaived legal error, (2) whether the error is 'plain' or 'obvious' under current law and (3) whether the error was prejudicial." *United States v. Merlos,* 8 F.3d 48, 50 (D.C.Cir.1993) (citing *United States v. Olano,* 507 U.S. 725, 732–36, 113 S.Ct. 1770, 1777–78 (1993)). We conclude all three prongs have been satisfied here and that Rawlings's conviction must therefore be reversed.[3]

■ We first find error in the judge's emphasis that credibility was *the* crucial issue. The testimony below was not a typical courtroom swearing contest. Rawlings admitted that he was one of three men in front of the convenience store the morning of May 4, that he reached into the box and touched the shotgun, that he ran off when the officers approached and that he passed through the alley where he was arrested. In addition, he did not contradict Scippio's description of Scippio's pursuit of a man carrying a Heineken box. The sole dispute was whether that man was Rawlings, that is whether Scippio's and Crews's identifications were accurate—a matter not so much of credibility as of perception and recall. Thus, contrary to the judge's assertion, the jury could have believed that both Rawlings and the government witnesses testified as to what they believed and nevertheless have returned a verdict of acquittal.[4] Equally important, the jurors were not, as the court erroneously instructed, required to decide whom to believe or what actually occurred. They had to determine only whether the Government proved what it alleged had happened beyond

---

**3.** To the extent the appellant alleges that the court misdescribed the reasonable doubt standard, we need not inquire into prejudice but only whether there was obvious error. *See Merlos,* 8 F.3d at 50–51.

**4.** We do not reverse on the ground, advanced by Rawlings, that the instruction by itself impermissibly shifted the burden of proof to the defendant. In *United States v. Spencer,* 25 F.3d 1105, 1110 (D.C.Cir.1994), we recently declined to reverse

a reasonable doubt. The court's emphasis on resolving the factual dispute was plainly inconsistent with its otherwise adequate burden of proof and reasonable doubt instructions.

Any confusion the earlier instructions caused was compounded by the judge's clumsy instruction on the elements of the charged offense. Insofar as that instruction purported to establish a hierarchy among the offense elements, it was erroneous. The Government was required to prove *each* element of the offense *beyond a reasonable doubt.* *See Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). No single element was more or less "important" than any other or required more or less proof. The judge erred in instructing otherwise.[5]

In sum, the combined effect of the challenged instructions was to divert the jurors' focus from the one question crucial to determining Rawlings's guilt or innocence: Did the government prove the three elements of possessing an unregistered firearm beyond a reasonable doubt? Given the likelihood that the instructions, when viewed together, may have confused or misled the jury, we conclude Rawlings's conviction must be reversed. *Cf. United States v. Alston,* 551 F.2d 315 (D.C.Cir.1976) (reversing conviction because jury may have been "swayed by the combined effect of the instructions suggesting that appellant might have assumed the burden of proof by volunteering an alibi").

For the preceding reasons we reverse Rawlings's conviction and remand for a new trial.

*So ordered.*

---

where the judge gave a similar instruction and there was a genuine, irreconcilable conflict between the two sides' testimony. *See id.* (finding no plain error in instruction "given the conflicting stories about [the defendant's] whereabouts at the time of his arrest, the defense's repeated contention that the police were lying, and [the defendant's] failure to object," and concluding that jury "could not have construed the court's remark to mean that the defendant had the burden of proof, unless it ignored the court's other instructions").

5. While this misinstruction may not have been prejudicial, and therefore not plain error, as it relates to the firearm registration element, which was not in dispute, it was clearly prejudicial on the element of intent which was hotly contested. During his testimony Rawlings consistently denied knowing what was in the box so that the jury could have acquitted him for lack of knowledge even if it found he possessed the box and the firearm it contained.