107 F.3d 923
 323 U.S.App.D.C. 290
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Keith KIRKLAND, Appellant.
 No. 94-3180.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 24, 1997.
 
 Before: SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While some of the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 36(b) (January 1, 1994). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the District Court appealed from in this cause is hereby affirmed, for the reasons set forth in the accompanying memorandum and the published opinion filed this date. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1) (January 1, 1994). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 Appellant alleges various errors in the district judge's conduct of trial, his jury instructions, and his sentencing decisions. In an opinion accompanying this judgment and memorandum, we address one of appellant's sentencing claims; this memorandum addresses the remaining claims. We affirm.
 
 
 5
 Appellant was arrested following his sale of crack cocaine to Special Agent Ronald Woods. The sale had been arranged by a confidential informant, Durrell Wheeler, who knew appellant. The government presented evidence at trial consisting principally of the testimony of Agent Woods and Wheeler, a tape recording made from a wire Woods wore during the transaction, a videotape shot from a nearby van, and the testimony of a DEA chemist regarding the identity of the drugs. The evidence showed that Agent Woods and Wheeler parked in an undercover car and paged appellant, who arrived at the scene with more than 80 grams of crack in a styrofoam cup. Woods testified, and other evidence corroborated, that appellant removed the crack from the cup and handed it to Woods. On receipt of the drugs, Agent Woods handed appellant $2,700. Appellant, followed by Wheeler, took the money into a nearby store to count it. Soon thereafter, appellant emerged from the store, told Agent Woods that "everything was okay," and departed.
 
 
 6
 Testifying in his own defense, appellant admitted that he had sold the drugs to Woods, but claimed that he only did so because Wheeler had threatened to kill him if he did not. He testified that he had no experience as a drug dealer, that he was unfamiliar with how drugs are sold, and that he was confused during the entire transaction. Although he admitted to being in the car in which the sale was consummated, he denied on cross-examination that it was his voice on the tape recording, and he claimed that prior to the sale he carried the drugs in his pocket, rather than in a cup.
 
 
 7
 Kirkland first alleges that the district judge deprived him of a fair trial by skeptically questioning appellant's testimony in support of his entrapment defense. This claim is not without some force. At five separate points during the direct, cross, and re-direct examinations of Kirkland, the district judge interjected with questions. Most of those questions were defensible in light of the contradictory positions appellant took on the stand, but one episode strikes us as improper. During his cross-examination of Kirkland, the prosecutor played a tape recording of the conversation that took place in the car in which the sale occurred (and where appellant had already admitted he sold the drugs). Appellant claimed that he did not know if the voice on the recording was his, and the prosecutor attacked that claim as improbable. At this point, the district judge questioned appellant in an apparent attempt to clarify that appellant's testimony was to the effect that he was in the car but that he could not say whether the voice on the tape was his. The prosecutor then opened another line of questioning, but the judge again interrupted:
 
 
 8
 THE COURT: You were in the car?
 
 
 9
 THE WITNESS: Yep.
 
 
 10
 THE COURT: But that isn't your voice?
 
 
 11
 THE WITNESS: It ain't my voice.
 
 
 12
 THE COURT: It sounds like President Clinton or Marion Barry?
 
 
 13
 THE WITNESS: I don't know who it sounds like. I know it don't sound like me.
 
 
 14
 At this point defense counsel objected.
 
 
 15
 We recognize that the trial judge's function is not merely to moderate courtroom procedures but extends to assisting the jury in reconciling confusing and contradictory evidence. See, e.g., United States v. Norris, 873 F.2d 1519, 1525 (D.C.Cir.1989). But the trial judge must scrupulously avoid any appearance of partiality, lest he run afoul of the maxim that " '[p]rosecution and judgment are two quite separate functions in the administration of justice; they must not merge.' " Id. at 1527 (quoting United States v. Marzano, 149 F.2d 923, 926 (2d Cir.1945)). In this case, even keeping in mind that our review of a cold record is inherently limited, we think the district judge exceeded the bounds of permissible questioning. The allusion to President Clinton and Mayor Barry evinced incredulity at appellant's testimony. To be sure, that testimony was self-contradictory and confusing in the extreme, but whether it was to be believed was a question for the jury. The court should not have suggested otherwise.
 
 
 16
 Although we think the judge's questioning of appellant exceeded his proper role, we do not think it deprived appellant of a fair trial, so as to render it reversible error. See, e.g., United States v. Logan, 998 F.2d 1025, 1029 (D.C.Cir.1993). The evidence of appellant's guilt was overwhelming: he himself acknowledged participation in the salient events, and his testimony regarding entrapment was thoroughly impeached, both by the prosecution and by his own contradictions. Kirkland admitted that he sold drugs to Agent Woods in the car, and he even admitted to participating in the conversation that accompanied that sale. His subsequent disavowal of his participation in that conversation bordered on the absurd, and was at the very least unclear. The district judge's questioning of that testimony, though improper, cannot be said to have been "so prejudicial that it denied [appellant] a fair, as opposed to perfect, trial." Logan, 998 F.2d at 1029.
 
 
 17
 Appellant next alleges plain error in the district court's jury instructions, which included the statement that "[i]n many ... trials ... there is a conflict between some witnesses and other witnesses, and somebody has to decide who is telling the truth; that is you, the jury." Appellant claims that this statement erroneously instructed the jury that it could not acquit Kirkland unless it believed his testimony, and accordingly diluted the prosecution's burden of proof. See United States v. Rawlings, 73 F.3d 1145, 1147-48 (D.C.Cir.1996). For its part, the government relies on United States v. Spencer, 25 F.3d 1105, 1110 (D.C.Cir.1994), which upheld a similar instruction in the context of a "genuine, irreconcilable conflict between the two sides' testimony," Rawlings, 73 F.3d at 1148 n. 4, and where the trial judge emphasized that the government had the burden to prove the defendant's guilt beyond a reasonable doubt. In Rawlings, the challenged instruction was plainly at odds with how the parties had framed the case for the jury. The police there testified that they had chased a man (whom they later identified as the defendant), lost sight of him, and then saw him again as he was apprehended by other officers. The defendant presented a case of mistaken identity: he did not deny that the police chased a man; rather, he simply maintained that he was not that man. As we emphasized, the inconsistent testimony was not a "typical courtroom swearing contest," but rather turned on varying "perception and recall." 73 F.3d at 1148. The instant case, on the other hand, is much more akin to that typical swearing contest. Appellant's testimony was in direct conflict with much of the prosecution's evidence, and especially with the testimony of Wheeler, who flatly denied appellant's claim that Wheeler had threatened him in order to gain his cooperation in the drug sale. Given such directly conflicting testimony, we cannot say that it was plain error to use the credibility instruction in this case.
 
 
 18
 Appellant also alleges plain error in the district judge's instruction to the jury on the identity of the substance he was accused of selling, which included the statement that "it is pretty clear that this stuff is crack, cocaine base." In appellant's view, this instruction, combined with the district court's characterization of the entrapment defense as "in a way more important" than other issues in the trial, erroneously "established a hierarchy among the offense elements." Rawlings, 73 F.3d at 1149. Taken in isolation, the instruction regarding the identity of the drugs appears effectively to remove from the jury's province one element of the offense that the prosecution was required to prove beyond a reasonable doubt. And the statement that the entrapment defense was "in a way more important" might be thought to suggest that the jury should convict if it did not believe that appellant was entrapped. We must, however, review any challenged instruction in context, and it is that context that convinces us that the instructions were not plainly erroneous. The statement regarding the identity of the drugs was preceded by the statements that "[a]s to whether this material in question is cocaine base or crack, you must decide that," and that "it is your decision to make"; it was immediately followed by the statement, "but you must make that decision." As to the "importance" of the entrapment defense, the district judge specifically admonished the jury to consider all his instructions, which included clear and unchallenged instructions of the government's burden of proof and the presumption of innocence. In addition, the judge's instructions mirror the defense attorney's closing argument, which stated that although "you have to pay attention to all of [the instructions], ... pay careful attention to the entrapment defense." It would encourage sandbagging to find error where the defense sets up a particular issue as the central element of trial, fails to object when the district judge's jury instructions reflect the defense's view of the case, and then challenges those instructions on appeal. Considered as a whole, the instructions were not plainly erroneous.
 
 
 19
 Finally, Kirkland objects to the district court's two-level increase of his offense level for obstruction of justice, based on giving false testimony at trial. See U.S.S.G. § 3C1.1. The court found that appellant had perjured himself with respect to whether he had handled the money he used to buy the drugs, whether he recognized his voice on the tape, and whether he carried the drugs in a styrofoam cup prior to the sale. Appellant argues that he did not perjure himself (he was merely confused) and that, in any event, the events about which he allegedly lied were not "material" and thus do not satisfy the requisite definition of perjury, which is supplied by 18 U.S.C. § 1621 (1994), see United States v. Dunnigan, 507 U.S. 87, 94-95 (1993). As to the first claim, the district judge's finding of perjury is a finding of fact that we will not disturb unless clearly erroneous. See United States v. Montague, 40 F.3d 1251, 1255 (D.C.Cir.1994). The evidence amply supports the district judge's conclusion in this respect: appellant contradicted himself (and the testimony of other witnesses) numerous times, and the district judge was well within his discretion to discredit the explanation that these contradictions were the result of "confusion." As to the materiality of the matters about which Kirkland perjured himself, we give "due deference" to the district judge's analysis. See United States v. Kim, 23 F.3d 513, 517 (D.C.Cir.1996). Appellant claims that since he admitted to participating in the drug sale, the particular facts regarding that sale cannot be considered "material." This argument is far-fetched: Kirkland claimed that he was not, and never had been, a drug dealer, and that he only participated in this one sale because his life had been threatened. The evidence regarding his conduct at the sale indicated that he was seasoned in the logistics of completing a drug sale. It was therefore "material" to whether he was predisposed to commit the crime; this easily satisfies the requirement that perjury be "relevant--not outcome determinative" to be considered "material." United States v. Smaw, 993 F.2d 902, 904 (D.C.Cir.1993).