United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 13, 2001 Decided November 6, 2001 

 No. 00-3089

 United States of America, 
 Appellee

 v.

 Antonio L. Venable, 
 Appellant

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 00cr00038-01)

 Lisa B. Wright, Assistant Federal Public Defender, argued 
the cause for appellant. With her on the brief was A.J. 
Kramer, Federal Public Defender. Valencia R. Rainey, 
Assistant Federal Public Defender, entered an appearance.

 Suzanne Grealy Curt, Assistant U.S. Attorney, argued the 
cause for appellee. With her on the brief were Wilma A. 
Lewis, U.S. Attorney at the time the brief was filed, and John 

R. Fisher, Roy W. McLeese III, and James G. Flood, Assis-
tant U.S. Attorneys.

 Before: Tatel and Garland, Circuit Judges, and 
Williams,* Senior Circuit Judge.

 Opinion for the Court filed by Circuit Judge Garland.

 Garland, Circuit Judge: A jury found Antonio Venable 
guilty of one count of unlawful possession of a firearm by a 
convicted felon, in violation of 18 U.S.C. s 922(g)(1). Venable 
challenges his conviction on the ground that, during closing 
argument, the prosecutor improperly suggested that the jury 
could acquit Venable only if it disbelieved three government 
witnesses. Because defense counsel did not object to the 
prosecutor's statement, and because the statement did not 
rise to the level of reversible error under Federal Rule of 
Criminal Procedure 52(b), we affirm.

 I

 On January 4, 2000, Talmadge Watson, the manager of a 
youth recreation center in the District of Columbia, made a 
911 call to the Metropolitan Police Department. Watson 
reported that a man with a gun was inside the center. He 
described the person as a black male, wearing a black leather 
jacket, a baseball cap with the letter "P" on it, and dark 
trousers. That description was broadcast over the police 
radio.

 Officer James Thomas responded to the broadcast and 
reached the recreation center at approximately 6:00 p.m. At 
trial, Thomas testified that, while walking toward the center, 
he saw a man leave the building who appeared to match the 
broadcast description. After noticing other police officers 
arrive on the scene, the man turned around and reentered the 
building. Officer Thomas then went into the center and, 
together with Officer Christopher Baxa, began to search for 
exits through which the suspect might have fled.

__________
 * Senior Circuit Judge Williams was in regular active service at 
the time of oral argument.

 At this point, Watson, the manager who had made the 
original 911 call, approached Baxa and told him that the 
suspect was at the front door. Officers Thomas and Baxa 
went back to the front of the building and detained defendant 
Venable, who was standing at the door. Venable was wearing 
dark jeans and a baseball cap with the letter "P," but not the 
black leather jacket that Thomas had seen on the man 
previously standing outside. While the cold and misty weath-
er warranted a coat, Venable was wearing only a T-shirt. 
Both Thomas and Baxa testified that, although they had not 
said a word about a black jacket, Venable spontaneously told 
them that he did not have one and that he had not worn a 
coat to the recreation center that day.

 The officers then began searching the center for the black 
leather jacket. Thomas soon found one, slightly wet, in a pile 
of coats on a pool table in the center's game room. According 
to Thomas' testimony, the jacket appeared to be the one worn 
by the man he had seen outside the center; Thomas did not, 
however, definitively identify Venable as that man. Wrapped 
inside the jacket, which contained no identifying information, 
was a loaded semi-automatic pistol.

 At trial, Venable's prior felony conviction was the subject of 
a stipulation between the parties. The chief witnesses 
against the defendant were the two police officers, who 
testified as set forth above, and Watson, who testified that he 
had seen Venable with the gun. The jury was told that 
Watson himself had two prior convictions: for making a false 
statement or misrepresentation to the police involving the use 
of a false driver's license, and for attempted possession of 
PCP. The principal defense witnesses were two recreation 
center employees, who described themselves as friends of 
Venable. Derrall Joyner, an assistant manager at the center, 
testified that Venable had come into the center without a 
jacket and had never entered the game room. Jenine Davis, 
a recreation specialist, testified that, at a meeting she attend-
ed with Watson and defense counsel, Watson agreed that 
Venable had not been wearing a black jacket and had not 

been in the game room. Upon cross-examination, Watson 
denied making such a statement.

 During closing argument, the prosecution maintained that 
Watson, despite his run-ins with the law, was a courageous 
man who deserved praise for his concern about the recreation 
center's safety, and who had no motive to notify the police 
falsely that Venable had a gun. The prosecution further 
suggested that, by contrast, the defense witnesses had mo-
tives to fabricate because they were friends of Venable and 
because Joyner resented the police's intrusion into the center. 
The defense countered that Watson had lied in the past, and 
that the jury should instead believe Joyner and Davis.

 In rebuttal, the Assistant United States Attorney continued 
to stress the credibility of the government's witnesses. He 
then made the statement that is at issue on this appeal: "For 
you to find Mr. Venable not guilty, you must disbelieve the 
testimony of Mr. Watson, Officer James Thomas, and Officer 
Baxa." Defense counsel did not object, and the jury convict-
ed Venable of violating 18 U.S.C. s 922(g)(1).

 II

 Because defendant's counsel did not object to the chal-
lenged statement, we review it only for plain error under 
Federal Rule of Criminal Procedure 52(b). See Johnson v. 
United States, 520 U.S. 461, 466 (1997). That standard 
requires: "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] 
substantial rights.' " Id. at 467 (quoting United States v. 
Olano, 507 U.S. 725, 732 (1993)). The third condition "in 
most cases ... means that the error must have been prejudi-
cial: It must have affected the outcome of the district court 
proceedings." Olano, 507 U.S. at 734. Moreover, it is "the 
defendant rather than the Government who bears the burden 
of persuasion with respect to prejudice." Id. Finally, "[i]f all 
three conditions are met, an appellate court may then exer-
cise its discretion to notice a forfeited error, but only if (4) the 
error 'seriously affect[s] the fairness, integrity, or public 
reputation of judicial proceedings.' " Johnson, 520 U.S. at 
467 (quoting Olano, 507 U.S. at 732) (other citations omitted).

 A

 Venable contends that the prosecutor's remark was plain 
error because it had the effect of "diluting" the government's 
burden of proof.1 Read with a grammarian's eye, the prose-
cutor's statement was surely error. Telling the jury that in 
order to acquit Venable it would have to disbelieve Watson, 
Thomas, and Baxa was logically equivalent to saying that the 
jury would have to convict Venable if it believed Watson, 
Thomas, or Baxa. That proposition was false. The testimo-
ny of Thomas or Baxa alone might well have been insufficient 
to find the defendant guilty and, in any event, would certainly 
not have compelled a guilty verdict. Moreover, the prosecu-
tor was wrong not just in using the conjunction "and," but 
also in using the verb "disbelieve." The jury did not need to 
disbelieve Watson or any other witness to acquit Venable. 
Reasonable doubt about Venable's guilt was all that was 
required. Cf. United States v. Rawlings, 73 F.3d 1145, 1148-
49 (D.C. Cir. 1996) ("[T]he jurors were not, as the court 
erroneously instructed, required to decide whom to be-
lieve.... They had to determine only whether the Govern-
ment proved what it alleged had happened beyond a reason-
able doubt.").

 To conclude that the prosecutor's statement was technically 
erroneous, however, is not to conclude that the error was 
plain--i.e., "clear" or "obvious," Olano, 507 U.S. at 734. 
Neither courts nor juries parse extemporaneous remarks in 
closing argument as closely as sentences in carefully drafted 
legal documents. Indeed, even in such documents authors 
sometimes use the word "and" to convey the meaning of 
"or"--and vice versa. See, e.g., Varel v. Banc One Capital 
Partners, Inc., 55 F.3d 1016, 1020-21 (5th Cir. 1995) (holding 
that the word "and" in a contract may mean "or"); see also, 
e.g., De Sylva v. Ballentine, 351 U.S. 570, 573 (1956) ("We 
start with the proposition that the word 'or' is often used as a 

__________
 1 The defendant concedes "that the prosecutor did not set out to 
intentionally dilute the government's burden of proof, and would 
surely not have made the misstatement if he had thought it 
through." Appellant's Reply Br. at 5.

careless substitute for the word 'and.' "). Likewise, the word 
"disbelieve" may be used loosely to indicate doubt rather than 
actual disbelief. In fact, in their written brief in this case, 
defendant's appellate counsel used the word in just that way. 
Focusing on the prosecutor's error in stating that the jury 
could not acquit unless it disbelieved Watson, Thomas, and 
Baxa, appellate counsel erroneously conceded that it was, 
however, "essentially correct to say that the jury could not 
acquit unless it disbelieved Watson." Appellant's Br. at 13. 
Appellate counsel's inaccurate formulation, contained in a 
brief they had ample time to craft, only underscores why 
statements made in the heat of oral argument are not and 
cannot be read with an editor's red pencil in hand. Cf. 
Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974) (cau-
tioning that a court should not lightly infer that a jury will 
draw the most damaging meaning from a prosecutor's remark 
in closing argument).

 In assessing the import of a statement made in closing 
argument, context is key. And in the context of the prosecu-
tor's entire argument in this case, it is not clear that the jury 
would have understood his statement to mean that crediting 
the testimony of any of the three witnesses would compel 
conviction. To the contrary, the prosecutor stressed the 
centrality of Watson's testimony, acknowledging that without 
Watson the government would not have had a case against 
Venable. Tr. at 270. Similarly, we hesitate to find that the 
jury would clearly have understood the prosecutor to say that 
acquittal required the jury's "disbelief" in the literal sense--
rather than reasonable doubt on the ultimate question of 
Venable's guilt--since the prosecutor also noted the govern-
ment's burden of proving guilt beyond a reasonable doubt. 
Id. at 258; cf. United States v. Spencer, 25 F.3d 1105, 1110 
(D.C. Cir. 1994) (holding that where a district court instructed 
the jury that it must decide whether the government's or the 
defendant's witnesses were lying, but had earlier given a 
proper instruction regarding the burden of proof, the "jury 
could not have construed the court's remark to mean that the 
defendant had the burden of proof, unless it ignored the 
court's other instructions"). Accordingly, we conclude that 

although the prosecutor's statement was erroneous, in context 
it was not plainly so.

 B

 Even if the prosecutor's error were plain, to warrant 
reversal of Venable's conviction it would also have to have 
prejudiced the outcome of the trial. See Olano, 507 U.S. at 
734. In evaluating the potential prejudice from an improper 
statement in closing argument, this court typically looks to 
the centrality of the issue affected, the severity of the prose-
cutor's misconduct, the steps taken to mitigate the miscon-
duct, and the closeness of the case. See United States v. 
Gartmon, 146 F.3d 1015, 1026 (D.C. Cir. 1998); United States 
v. North, 910 F.2d 843, 895 (D.C. Cir. 1990). Considering 
those factors, we do not find the kind of prejudice necessary 
to justify vacating Venable's conviction.

 Although the issue affected by the prosecutor's comment, 
the government's burden of proof, was as central to this case 
as it would be to any case, the prosecutor's misstatement 
cannot be characterized as severe. As noted above, in con-
text it is not clear that the jury would have understood the 
prosecutor as misstating (or diluting) the government's bur-
den. Moreover, the offending comment consisted of a single 
sentence in the course of a closing that was otherwise devoted 
to proper argument regarding why the government witnesses 
were believable and the defense witnesses were not. As we 
held in United States v. North, "[w]ithout other compelling 
factors, a single misstatement confined to a closing argument 
rarely amounts to severe misconduct." 910 F.2d at 897.

 There are no such compelling factors here. To the con-
trary, the prosecutor's misstatement was mitigated by the 
court's twice-delivered instructions that the "law doesn't re-
quire a defendant to prove his innocence, produce evidence or 
testify," and that the burden of proof "is on the Government 
to prove the defendant guilty beyond a reasonable doubt and 
that burden of proof never shifts throughout the trial," Tr. at 
19 (initial instructions); id. at 275 (final instructions). See 

United States v. Catlett, 97 F.3d 565, 573 (D.C. Cir. 1996) 
(holding that the same burden-of-proof instruction as that 
used here cured any confusion caused by a prosecutor's 
remark that the jury could have understood as burden-
shifting); United States v. Trapnell, 638 F.2d 1016, 1026 (7th 
Cir. 1980) (finding no plain error where, although the prose-
cutor made a remark similar to that challenged here, "the 
trial court's instructions unambiguously place[d] the burden 
of proof on the government"). The impact of the misstate-
ment was still further reduced by the judge's instructions that 
it was the court's responsibility to apprise the jury as to the 
law, and that the lawyers' statements were merely argument. 
See generally Gartmon, 146 F.3d at 1026; United States v. 
Gatling, 96 F.3d 1511, 1524 (D.C. Cir. 1996).

 Finally, although the evidence against Venable was not 
overwhelming, it was sufficiently strong, in light of the fore-
going factors, to undermine the assertion that the outcome of 
the trial was affected by the prosecutor's statement. Wat-
son's eyewitness testimony regarding Venable's possession of 
the weapon (together with the stipulation that Venable had a 
felony conviction) established all of the elements of the crime. 
And while Watson was not an unimpeachable witness, the 
defense did not suggest any motive for him to accuse Venable 
falsely. Moreover, Watson's testimony was corroborated in 
important parts by both the officers' testimony and Venable's 
own spontaneous utterance. The officers' observations sup-
ported the prosecution's theory that Venable removed his 
jacket--wet from the mist outside--and wrapped the gun in it 
when he saw them coming. And Venable's declaration that 
he had not worn a black jacket that day--at a time when the 
officers had not yet said a word about a jacket--was a classic 
example of "protesting too much."

 Weighing all these factors, we conclude that the defendant 
has not met his burden, under the third prong of the plain 
error standard, to establish prejudice arising from the prose-
cutor's error. Thus, there is no need for us to consider how 
Venable would fare under the fourth prong of the standard, 
which further requires him to establish that the error "seri-
ously affect[s] the fairness, integrity, or public reputation of 

judicial proceedings." Johnson, 520 U.S. at 467 (quoting 
Olano, 507 U.S. at 732) (other citations omitted).2

 III

 In the context in which it was made, the prosecutor's 
erroneous misstatement of the standard for acquittal was 
neither plain nor prejudicial. Accordingly, the defendant's 
conviction is

 Affirmed.

__________
 2 Venable suggests that an additional error, also not objected to 
below, occurred when the district court instructed that it was the 
jury's function "to determine what the facts are in this case," Tr. at 
272. We have previously disapproved such an instruction because 
the jury's responsibility is not to determine what actually occurred, 
but rather to determine whether the government has proved its 
allegations beyond a reasonable doubt. See Rawlings, 73 F.3d at 
1148-49. We have declined, however, to hold that such an instruc-
tion impermissibly shifts the burden of proof to the defendant, see 
United States v. Wilson, 160 F.3d 732, 747 (D.C. Cir. 1998); 
Rawlings, 73 F.3d at 1149 n.4, and have refused to reverse convic-
tions on account of such an instruction where--as here--the district 
court "repeatedly and correctly instruct[ed] the jury that the gov-
ernment had the burden of proof beyond a reasonable doubt," 
Wilson, 160 F.3d at 747; see Spencer, 25 F.3d at 1110; see also 
Rawlings, 73 F.3d at 1148-49 (declining to reverse on the basis of a 
similar instruction alone, but reversing because that instruction 
combined with another instructional error likely misled the jury).