**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 5 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

JAMES COLLINS,

Defendant - Appellee.

No. 96-5039

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA
### (D. Ct. No. 95-CR-78-K)

---

Daniel Goodman, U.S. Department of Justice, Washington, DC (Stephen C. Lewis, U.S. Attorney and Allen J. Litchfield, Assistant U.S. Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, with him on the briefs), appearing for Plaintiff-Appellant.

Jeffrey D. Fischer (Lewis S. Fine with him on the brief), Tulsa, Oklahoma, appearing for Defendant-Appellee.

---

Before SEYMOUR, ANDERSON, and TACHA, Circuit Judges.

---

TACHA, Circuit Judge.

---

Defendant James Collins pleaded guilty to one count of knowingly and

intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and was

sentenced to 42 months imprisonment. On appeal, the government challenges the district court's downward departure from the career offender guideline range. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## BACKGROUND

On September 19, 1995, at age 64, James Collins pleaded guilty to one count of knowingly and intentionally distributing 279.7 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The Presentence Investigation Report (PSR) concluded that Collins's base offense level was 20, U.S.S.G. § 2D1.1(c)(10) (at least 200 but less than 300 grams of cocaine), and recommended a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. The PSR calculated that Collins had a criminal history category of IV. U.S.S.G. § 4A1.1. Under the Guidelines, an adjusted offense level of 17 and a criminal-history category of IV would have resulted in a range of 37-46 months.

The PSR also concluded, however, that Collins qualified as a career offender under U.S.S.G. § 4B1.1. He was over 18; the instant offense was a controlled substance offense; and Collins had two prior felony convictions for controlled substance offenses. In 1984, at age 53, Collins was arrested in Okmulgee County, Oklahoma, for possession of marijuana with intent to distribute. In 1986, fifteen months later, he pleaded guilty to that offense and

received a five-year sentence with the balance suspended after nine months served. In 1991, at age 59, he was arrested in Phoenix, Arizona, for conspiring to sell and transport cocaine. He pleaded guilty and received six months imprisonment and seven years probation.[1] As a career offender, Collins's adjusted offense level was 29 and his criminal-history category was VI, which resulted in a range of 151-188 months.

Prior to sentencing, Collins filed a motion for a downward departure on the basis that his career offender status "significantly over-represents the seriousness of [his] criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. Collins set forth three grounds supporting a downward departure: (1) his age, (2) his ill health, and (3) a predicate conviction close to ten years prior to the instant offense resulting in a relatively lenient sentence. The government opposed the departure, arguing that Collins's status as a career offender properly reflected the seriousness of his criminal history and that his age and health problems were not so extraordinary as to warrant a downward departure.

At the sentencing hearing, the district court granted Collins's motion for downward departure, explaining its reasoning as follows:

---

[1] In addition to his two prior convictions for controlled substance offenses, Collins pleaded guilty in 1964 to possession of an illegal still, pleaded guilty in 1976 to possession of marijuana, and pleaded nolo contendere in 1990 to assault and battery.

The Court finds that Mr. Collins'[s] age in addition to his various infirmities including heart disease, high blood pressure, ulcers, arthritis, and prostatitis warrant a downward departure from the career offender category. Further it's significant that the application of the career offender category effectively would change his sentence from a little more than three years . . . to possibly life imprisonment . . . .

The departure is based on two prongs under [U.S.S.G. §§] 4A1.3 and 5H1.1. Due to defendant's age and infirmity the Court believes [a departure is] warranted because . . . the categorization significantly over represents the likelihood that the defendant will commit future crimes. And secondly, because the resulting increase likely from three years . . . to over 12 and a half years . . . will likely have an effect of a degree not adequately taken into consideration by the sentencing commission.

App't. App. at 71-72. The court also noted that Collins's 1986 conviction was almost ten years old, adding that if "there had been a timely preliminary hearing and progress in the case, this matter may have resulted in a conviction prior to February 3, 1985, and thus would not have constituted a predicate offense under [U.S.S.G. § 4B1.1]." Id. at 72. In addition, the court found that Collins's previous narcotics convictions were "minor offenses" for which his sentences were "relatively lenient." Id.

In the Judgment entered on January 17, 1996, the district court clarified its reasons for granting Collins a downward departure:

The Court adopts the factual findings and guideline application in the presentence report, except: The court finds that the defendant is not a career offender pursuant to U.S.S.G. § 4B1.1, as recommended in the presentence report . . . . The Court departs from the career offender category because it significantly over-represents the seriousness of defendant's criminal history and the likelihood that

- 4 -

the defendant will commit further crimes. U.S.S.G. §§ 4A1.3, 5K2.0. This finding is based on the following factual findings: the defendant is elderly and infirm, id. § 5H1.1, and one of the predicate offenses for the career offender categorization occurred close to ten years prior to the instant offense, id. § 4A1.3.[2]

App't App. at 18. After departing from the career offender guideline range (151-188 months), the court imposed a sentence within the range that would have applied without the career offender enhancement (37-46 months).

On appeal, the government contends that the district court erred in departing downward from the career offender guideline because: (1) all of the factors upon which the district court relied were adequately taken into account by the Sentencing Commission, (2) the record does not support the district court's finding that Collins's career offender status overstates his criminal history and the likelihood that he will engage in further criminal activity, and (3) the departure of 109 months is unreasonable.

## DISCUSSION

I.  DEPARTURE ANALYSIS AFTER KOON

---

[2] Although the district court stated that it "finds that the defendant is not a career offender," the parties agree that Collins qualified as a career offender under U.S.S.G. § 4B1.1. The district court correctly stated that it was departing downward from the otherwise applicable career offender category.

Because the Supreme Court's recent decision in <u>Koon v. United States</u>, 116 S. Ct. 2035 (1996), has altered our multi-step approach in reviewing departures, we begin by setting forth the general framework under which a district court may consider a departure and the role of appellate courts in reviewing a decision to depart. We then briefly discuss the respective roles of the district and appellate courts in the particular context of departures under U.S.S.G. § 4A1.3 from the career offender category. Finally, we apply this post-<u>Koon</u> departure analysis to the case at hand.

## A.    Overview of <u>Koon</u>

### 1.    The District Court's Decision to Depart

Under the Sentencing Guidelines, after a district court determines a defendant's offense level, criminal history category, and the applicable guideline range, the district court should consider whether a case is a candidate for a departure. U.S.S.G. § 1B1.1(i). The Sentencing Guidelines permit a sentencing court to depart from the Guidelines if "the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). In <u>Koon</u>, the Supreme Court noted that this language necessarily implies a distinction between

a "heartland case" and an "unusual case." <u>Koon</u>, 116 S. Ct. at 2044. The Court explained:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

<u>Id.</u> (quoting U.S.S.G. ch.1 pt. A, intro. comment. 4(b)).

In deciding whether the facts of a particular case warrant a departure, sentencing courts must look to all the factors that potentially make a case atypical. Except for a limited number of "forbidden" factors,[3] the guidelines do not "limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." <u>Id.</u> (quoting U.S.S.G. ch. 1 pt. A, intro. comment. 4(b)). "Sentencing courts are not left adrift, however," <u>id.</u> at 2045, because the Guidelines list factors that are encouraged as bases for departure and those that are discouraged. The Court in <u>Koon</u> instructed sentencing courts on the proper evaluation of potential departure factors:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged

---

[3] The forbidden factors are race, sex, national origin, creed, religion, and socio-economic status, § 5H1.10; lack of guidance as a youth, § 5H1.12; drug or alcohol dependence, § 5H1.4; and economic duress, § 5K2.12.

factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

Id. (citations omitted).

After Koon, it is now apparent that a district court may consider a departure when "certain aspects of the case [are] found unusual enough for it to fall outside the heartland of cases in the Guideline." Id. at 2046. District courts are authorized to depart in this situation because "the Commission itself admits that it has not adequately considered 'unusual' cases." United States v. Rivera, 994 F.2d 942, 947 (1st Cir. 1993); see also Koon, 116 S. Ct. at 2044 ("[W]e learn that the Commission did not adequately take into account cases that are, for one reason or another, 'unusual.'").

But when is a case so "unusual" that it is a candidate for a departure? The Supreme Court in Koon made clear that this question is largely for the district court to answer. The Court explained that "[t]o resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome,

informed by its vantage point and day-to-day experience in criminal sentencing." Id. at 2046-47. Thus, Koon informs us that the district courts perform the most important function in sentencing, at least in the context of departures, because they have the responsibility of determining in the first instance whether the factual circumstances of a case remove it from the applicable guideline heartland, making the case a candidate for a departure.

**2.      Review on Appeal**

What then is the role of an appellate court in reviewing a district court's decision to depart from the Guidelines?  The Tenth Circuit approach established prior to Koon in United States v. White, 893 F.2d 276 (10th Cir. 1990), is framed somewhat differently than the approach announced in Koon.  White requires an appellate court to engage in a three-step review of upward departures: (1) de novo review of whether the circumstances cited by the district court encompass a factor not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines; (2) clearly erroneous review of the factual determinations underlying the decision to depart; and (3) reasonableness review of the degree of departure.  Id. at 277-78; see also United States v. Maldonado-Campos, 920 F.2d 714, 719-20 (10th Cir. 1990) (same three-step approach applies to downward departures).

After Koon, appellate courts must now review departures under a unitary abuse-of-discretion standard which "includes review to determine that the discretion [of the district court] was not guided by erroneous legal conclusions." Koon, 116 S. Ct. at 2047-48. Koon made explicit that in promulgating the Guidelines, Congress did not intend "to vest in appellate courts wide-ranging authority over district court sentencing decisions." Id. at 2046. Rather, Congress meant to "establish[] limited appellate review" where "district courts retain much of their traditional sentencing discretion." Id.

In determining what aspects of the sentencing decision should be left largely to the discretion of the district court, the Supreme Court made this seminal statement: "The deference that is due depends on the nature of the question presented." Id. When the question presented is essentially factual, appellate review should be at its most deferential. The Court stated that in most cases departure decisions will fall into this category. The Court explained that "[a] district court's decision to depart from the guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Id. at 2046; see also Rivera, 994 F.2d at 951 ("In many . . . instances, the district court's [departure decision] . . . will not involve a 'quintessentially legal' interpretation of the words of a guideline, but rather will amount to a judgment about whether the given circumstances, as seen from the

district court's unique vantage point, are usual or unusual, ordinary or not ordinary, and to what extent.").

When the issue is essentially legal, however, appellate review should be plenary. For example, the Court stated that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." Koon, 116 S. Ct. at 2047.[4]

In sum, after Koon, appellate review of departures is guided by the nature of the question presented. One component of the decision to depart is essentially legal: whether the factual circumstances supporting departure are permissible departure factors. See Rivera, 994 F.2d at 951. Impermissible factors include forbidden factors, discouraged factors that are not present to some exceptional degree, and encouraged factors already taken into account by the applicable guideline that are not present to some exceptional degree. A second component is

---

[4] Although a district court's decision to depart usually involves an essentially factual inquiry, in some cases the determination that a defendant falls outside an applicable guideline heartland will not be based primarily on the court's judgment about the facts of the case, but will involve the court's determination as to what constitutes a guideline's heartland. In this situation appellate review would not be deferential because the question of what constitutes a guideline's heartland is essentially legal in nature. See Rivera, 994 F.2d at 951 (discussing, for example, the "quintessentially legal" question of what constitutes the heartland of the child pornography guideline).

essentially factual: whether the factual circumstances from the vantage point of the district court make this the atypical case.  See id. at 951-52.

Thus, in determining whether the district court abused its discretion in departing from the Guidelines, appellate courts after Koon must evaluate: (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.  In performing this review,  Koon tells us that an appellate court need not defer to the district court's resolution of the first question, whether a factor is a permissible departure factor under any circumstances, but must give "substantial deference" to the district court's resolution of the second question, whether "a particular [defendant] is within the heartland given all the facts of the case."  Id.[5] Because Koon did not address the second and third steps of our prior multi-step approach—record support for the factual circumstances underlying the departure and reasonable review of the degree of departure—they remain as before.  We

_____

[5]  If an appellate court determines that a district court based a departure on both valid and invalid factors, the court should remand the case unless it determines the district court "would have imposed the same sentence absent reliance on the invalid factors." Koon, 116 S. Ct. at 2053-54 (citing United States v. Williams, 503 U.S. 193, 203 (1992)).

emphasize, however, that all four steps of the departure review are subject to a unitary abuse of discretion standard.

**B.     Career Offender Category Departures under § 4A1.3**

**1.     The Decision to Depart**

As discussed above, a district court is authorized to depart from the Guidelines only if the court finds a mitigating or aggravating factor not adequately taken into account by the Commission.  See U.S.S.G. § 5K2.0; 18 U.S.C. § 3553(b).  One such circumstance appears in U.S.S.G. § 4A1.3.  See Maldonado-Campos, 920 F.2d at 719, n.2 (holding that departures under section 4A1.3 are a subset of departures under section 5K2.0).  Section 4A1.3 permits a departure when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3, p.s.

In deciding whether to depart under section 4A1.3, the district court must specifically address the adequacy of a defendant's criminal history category as it reflects both the defendant's past criminal conduct and likely criminal future. The purpose of section 4A1.3 is to allow a district court to deviate from the otherwise applicable guideline range where a defendant's criminal history,

likelihood of recidivism, or both differ significantly from the typical offender for whom the applicable criminal history category was formulated. In other words, a district court may depart when a defendant's criminal past or likely criminal future removes the defendant from the heartland of the applicable criminal history category.

This "heartland" analysis extends to defendants sentenced as career offenders. The automatic placement of a career offender in criminal history category VI under U.S.S.G. § 4B1.1 reflects the Commission's assessment that the offender possesses the most serious criminal history and the highest possible likelihood of recidivism. Thus, for a defendant who technically qualifies as a career offender but whose criminal history and likelihood of recidivism significantly differ from the heartland of career offenders, the sentencing court may consider a departure from the career offender category. United States v. Bowser, 941 F.2d 1019, 1025 (10th Cir. 1991); see also United States v. Lindia, 82 F.3d 1154, 1165 (1st Cir. 1996); United States v. Spencer, 25 F.3d 1105, 1113 (D.C. Cir. 1994); United States v. Rogers, 972 F.2d 489, 493-94 (2d Cir. 1992); United States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir. 1990); United States v. Brown, 903 F.2d 540, 545 (8th Cir. 1990).

In departing downward under section 4A1.3 from the career offender guideline, the district court must justify its finding that a defendant's career

offender status significantly overstates the seriousness of the defendant's criminal history or likelihood for recidivism. As with all departure decisions, the district court should consider all of the factual circumstances that bear upon a defendant's criminal history and likelihood for recidivism, but the district court may not rely on any impermissible departure factors. For each potential departure factor, the court must ask whether it is a permissible factor. After the district court has determined which factors are permissible departure factors, the court then must determine whether these factors, alone or in combination, cause the defendant's career offender status to over-represent the seriousness of his criminal history or likelihood for recidivism. Only then may the district court depart under section 4A1.3 from the otherwise applicable guideline range for a career offender.

### 2. Review on Appeal

In reviewing a departure under section 4A1.3, an appellate court must first address whether the district court has relied on a permissible departure factor. The Sentencing Guidelines explicitly encourage a departure when the district court concludes that a defendant's criminal history category over-represents the seriousness of the defendant's criminal history or likelihood of recidivism. The Commission's commentary to section 4A1.3 makes clear that "the criminal history score is unlikely to take into account all the variations in the seriousness of

criminal history that may occur." U.S.S.G. § 4A1.3, comment. (backg'd.).

Because section 4A1.3 provides an encouraged basis for departure not already

taken into account by the Commission, over-representation of a defendant's

criminal history or likelihood for recidivism always will be an approved ground

for departure.

That does not end the inquiry into whether the district court has relied on

any impermissible departure factors, however, because the district court must

identify the factual bases supporting its finding of over-representation. These

supporting facts themselves must constitute permissible grounds for departure.

Bowser, 940 F.2d at 1023-25. For example, a district court may not conclude that

a defendant is less likely to commit further crimes because of her particular socio-

economic status, a forbidden factor under the Guidelines. Therefore, an appellate

court must address whether the factual circumstances identified by the district

court in support of its finding of over-representation are permissible departure

factors. If any are impermissible, they may not be used.

Once the appellate court has determined that the district court has relied

upon permissible departure factors, the court should proceed to the second

inquiry: whether the factual circumstances identified by the district court remove

the defendant from the career offender heartland. Despite the "technically legal

nature of [this] question," Rivera, 994 F.2d at 951, appellate courts should not

"ignore the district court's special competence . . . about the 'ordinariness' or 'unusualness' of a particular case." Koon, 116 S. Ct. at 2047 (quoting Rivera, 994 F.2d at 951). Thus, the district court's resolution of the second inquiry should not be disturbed unless the court abused its discretion—that is, unless it "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Boughton v. Cotter Corp., 65 F.3d 823, 832 (10th Cir. 1995) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553 (10th Cir. 1991)). Finally, appellate courts should ensure that the record adequately supports the factual basis for the departure and that the degree of departure is reasonable. See White, 893 F.2d at 277-78

## II. APPLYING THE DEPARTURE ANALYSIS

We now apply this departure analysis to the case before us. The district court in the present case departed downward from the applicable guideline range for a career offender. In departing downward, the district court gave three reasons supporting its conclusion that Collins's career offender status overstates his criminal past and likely criminal future, thus removing him from the heartland of the career offender guideline. The district court stated that Collins's age, infirmity, and the circumstances surrounding his 1986 predicate conviction, taken

together, justified the court's finding of over-representation under section 4A1.3.[6] In reviewing the district court's decision to depart, we must first ask whether the court relied on permissible departure factors. If all of the factors relied upon by the district court are permissible factors, we then ask whether the combination of factors removes this defendant from the career offender heartland. Once again, we perform this second step giving "substantial deference" to the district court's conclusion that the facts of the case make this defendant atypical. Koon, 116 S. Ct. at 2046.

## A.    Permissibility of Departure Factors

In considering whether the district court relied on any impermissible departure factors, we address as a general matter whether a district court may rely on offender characteristics, such as age and infirmity, to support a criminal history category departure under section 4A1.3. In section 5K2.0, the Guidelines discuss the use of offender characteristics in the context of departures:

---

[6] We note that the district court could have considered a downward departure separately under U.S.S.G. §§ 5H1.1 (age and infirmity) or 5H1.4 (physical condition). In this case, the district court did not depart downward under these separate guideline sections, and in fact stated that it was not departing under § 5H1.4 alone because it did not find that Collins suffered from an "extraordinary physical impairment" as required by that guideline. Accordingly, we emphasize that we discuss age and infirmity only as factors supporting the court's decision to grant a departure under § 4A1.3.

An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0, p.s. We have previously concluded that despite the placement of section 4A1.3 in chapter 4 of the Guidelines, departures under section 4A1.3 are not "beyond the purview" of section 5K2.0. Maldonado-Campos, 920 F.2d at 719 n.2; see also Bowser, 941 F.2d at 1023-25. But see United States v. Shoupe, 988 F.2d 440, 444-47 (3d Cir. 1993); United States v. Pinckney, 938 F.2d 519, 521 (4th Cir. 1991). Cf. United States v. Spencer, 25 F.3d 1105, 1112-13 (D.C. Cir. 1994) (declining to choose between Shoupe and Pinckney, on the one hand, and the contrary decisions of the Tenth Circuit, on the other). In other words, the overstatement of a defendant's criminal history or likelihood of recidivism is a "mitigating factor not adequately taken into account by the Sentencing Commission" within the meaning of section 5K2.0. Because departures under section 4A1.3 are made pursuant to section 5K2.0, and because the above-quoted paragraph from section 5K2.0 explicitly sanctions the use of offender characteristics in the context of departures, we conclude that a sentencing court may utilize offender characteristics that bear upon a defendant's criminal history or likelihood for recidivism in considering a departure under section 4A1.3.

In the past, we sanctioned the limited use of offender characteristics to support a criminal history departure under section 4A1.3. In United States v. Bowser, 941 F.2d at 1024, we looked to U.S.S.G. § 5H1.1,[7] which generally rejects age as a ground for departure, and concluded that age alone is insufficient to support a departure under section 4A1.3. We nevertheless stated that "taken in the context of the other circumstances of a defendant's criminal history, [age] could be germane to whether the career offender category is appropriately applied to an individual defendant." Id. We continue to adhere to this approach today and conclude that in considering a departure under section 4A1.3, a district court may rely on offender characteristics such as age and infirmity that are logically relevant to a defendant's criminal history or likelihood for recidivism, but only in combination with other circumstances of a defendant's criminal history. We see nothing in the Guidelines that precludes a district court's use of offender characteristics as part of the factual basis for a criminal history departure under section 4A1.3. See Shoupe, 988 F.2d at 447 (defendant's age at time of prior convictions and time between convictions are proper factors to consider in

_____

[7] U.S.S.G. § 5H1.1 provides:
Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

determining whether to depart under § 4A1.3 from the career offender category); United States v. Brown, 985 F.2d 478, 482 (9th Cir. 1993) (age at time of prior convictions and nature of those convictions are proper factors to consider in determining whether career offender status significantly over-represents seriousness of defendant's criminal history); United States v. Smith, 909 F.2d 1164, 1169 (8th Cir. 1990) (length and scope of defendant's criminal career, including age of defendant at time of prior offenses and time between prior offenses, is relevant to decision whether to depart from criminal history category); United States v. Brown, 903 F.2d 540, 544 (8th Cir. 1990) (although age is not a factor warranting a general departure under § 5K2.0, it may be considered in determining whether, under § 4A1.3, criminal history category overstated severity of defendant's criminal history).

Having said this, we emphasize the continuing validity of our statement that "[i]n reviewing a district court's decision to depart from the otherwise applicable guideline range, we must be careful not to blur the distinction between offense level departures and criminal history departures." United States v. Okane, 52 F.3d 828, 832 (10th Cir. 1995). This does not mean, however, that offender characteristics, such as age and infirmity, cannot be used as a matter of law to support a finding under section 4A1.3 that an offender has a more or less serious criminal history (as in Bowser) or is more or less likely to commit further crimes

(as is the case here). Rather, it means, as Okane made clear, that circumstances making up a defendant's criminal history cannot be used as a basis for an offense-level departure and circumstances surrounding the instant offense cannot be used as a basis for a criminal history category departure. Thus, in Okane, the district court erred by granting an upward offense-level departure based on the defendant's admission of thirteen uncharged bank robberies. Id. at 833. In reversing the district court, we stated that "[w]hile uncharged conduct is certainly a valid basis for an upward departure, . . . the district court erred by increasing Mr. Okane's offense level, as opposed to his criminal history category." Id. Nothing in today's opinion disrupts this conclusion.

Having determined that offender characteristics, in general, may make up part of the mix of factors supporting a departure under section 4A1.3, we next address whether the particular factors identified by the district court in this case are permissible departure factors. After reviewing the Sentencing Guidelines, policy statements, and official commentary of the Sentencing Commission, Koon, 116 S. Ct. at 2044, we conclude that none of the factors relied upon by the district court as part of its composite rationale is an impermissible departure factor.

The Guidelines explicitly state that age and physical condition, the first two factors identified by the district court, are "not ordinarily relevant" in considering whether a defendant is a candidate for departure. U.S.S.G. §§ 5H1.1, 5H1.4.

Because these factors are not ordinarily relevant, they are "discouraged" factors. Therefore, as stated in Koon, the district court could have relied on these factors only if they were "present to an exceptional degree or in some other way [made] the case different from the ordinary case where the factor[s are] present." Id. at 2045.

After reviewing the record, we conclude that the district court did not abuse its discretion in finding that Collins's age and infirmity were present to an exceptional degree. The Pre-Sentence Report indicates that Collins was 64 years old on the date of sentencing. Medical records provided by Collins's attending physician and a urological report undertaken at the request of the United States Marshal's Office prior to sentencing indicate that Collins suffers from heart disease, high blood pressure, ulcers, arthritis and prostatitis. The medical records further show that Collins faces the prospect of intrusive surgery to address his prostatitis. Although the terms "elderly" and "infirm" are difficult to define, and more difficult to measure in degree, we cannot say that the district court abused its discretion in concluding that the factors of age and infirmity are present in this case to an exceptional degree. We therefore conclude that the district court properly relied upon Collins's age and infirmity in departing downward from the Guidelines.

Similarly, we conclude that the district court properly relied upon the circumstances surrounding Collins's 1986 conviction. In determining that Collins was outside the heartland of the career offender category, the district court found that one of Collins's predicate convictions occurred close to ten years prior to the instant offense, involved conduct committed beyond the ten-year time limit, and resulted in a relatively lenient sentence. Although not categorized as forbidden, discouraged, or encouraged, the circumstances cited by the district court are not unmentioned in the Guidelines. In particular, the Guidelines recognize that a prior conviction close to the ten-year time limit may be relevant in determining whether a departure is appropriate under section 4A1.3. Section 4A1.3 contains the example of "a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3, p.s. Rather than setting forth the minimum requirements for a criminal history category departure, this example is meant to guide the district courts in the kinds of factors that are relevant in deciding whether a particular defendant lies outside the heartland of the applicable criminal history or career offender category.

Thus, a district court properly could conclude that a defendant with a predicate conviction close to ten years prior to the instant offense is not as likely to recidivate as a career offender whose predicate convictions occurred closer to

the instant offense.  See United States v. Fletcher, 15 F.3d 553, 557 (6th Cir. 1994) ("[A] district court may take the age of prior convictions into account when considering a defendant's likelihood of . . . recidivism.").  A district court also could conclude that a defendant who received a "relatively lenient" sentence for a predicate conviction has a less serious criminal history than a career offender whose predicate convictions resulted in lengthy periods of incarceration.  See United States v. Spencer, 25 F.3d 1105, 1113 (D.C. Cir. 1994) (stating that "the relatively minor nature" of a defendant's prior convictions may be considered in deciding whether to depart under section 4A1.3).  Finally, a district court could conclude that delay in the prosecution of a defendant who committed the conduct underlying a predicate conviction more than ten years prior to the instant offense, under some circumstances, may warrant a departure.  See United States v. Martinez, 77 F.3d 332, 336-37 (9th Cir. 1996) (recognizing that delay in the prosecution of an offense resulting in unfair sentencing consequences could constitute a permissible ground for departure).  We see nothing in the structure and theory of the Guidelines that would restrict the district court from considering these kinds of factual circumstances which bear upon the seriousness of a defendant's criminal history or likelihood of recidivism. Therefore, we conclude that the circumstances surrounding Collins's 1986 predicate conviction are permissible factors for departure.

**B.     Downward Departure**

Because the district court did not rely on any impermissible departure factors, we now move to the second inquiry in our departure analysis: whether the combination of factors identified by the district court warrants a downward departure from the career offender guideline.  The government's primary argument on appeal is that these factual circumstances are not sufficient to remove Collins from the heartland of career offenders.  After reviewing the record, we conclude that the district court did not abuse its discretion in departing downward on the basis that Collins's age, infirmity, and the circumstances surrounding his 1986 predicate conviction remove him from the heartland of the career offender guideline.[8]

As discussed earlier, Collins was sixty-four at the time of sentencing. When Collins is released from his current term of imprisonment, he will be nearly seventy years old.  The record shows that Collins suffers from a long list of infirmities.  In light of Collins's old age and ill health, the district court was well within its discretion in concluding that Collins is less likely to recidivate than the ordinary defendant categorized as a career offender.

---

[8] The government does not dispute the district court's finding that Collins is elderly and infirm, nor does it dispute the existence of the circumstances surrounding his 1986 conviction.  Therefore, the third step of our analysis—record support for the factual circumstances underlying the departure—is satisfied.

The district court was also within its discretion in concluding that the use of Collins's 1986 marijuana possession conviction, while technically rendering Collins a career offender, in fact resulted in the overstatement of the seriousness of his criminal history and likelihood for recidivism. Collins committed the offense underlying the 1986 conviction roughly 15 months before sentencing and prior to the ten-year time limit specified in the career offender guideline. As the district court noted, a quicker prosecution of the case would have resulted in the imposition of a sentence outside the ten-year period, thereby precluding the career offender sentence enhancement altogether. Further, the district court found that the conviction resulted in a relatively lenient sentence. Relying on these factors and despite Collins's intervening cocaine trafficking conviction in 1991, the district court concluded that Collins was unlike the typical career offender. The district court's ultimate determination that Collins's age, infirmity, and the circumstances surrounding his 1986 conviction remove him from the career offender heartland is "just the sort of determination that must be accorded deference by the appellate courts." Koon, 116 S. Ct. at 2053. Accordingly, we conclude that the district court did not abuse its discretion in concluding that the various departure factors it relied upon warranted a departure.

## C.  Reasonableness of Degree of Departure

Finally, we consider whether the degree of departure was reasonable.  In making this determination, we consider the district court's reasons for imposing the particular sentence together with factors such as: "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities."  United States v. White, 893 F.2d 276, 278 (10th Cir. 1990) (citing 18 U.S.C. § 3742(e)(3) and 18 U.S.C. § 3553(a)).  We have held that in departing from the applicable guideline range, a district court "must specifically articulate reasons for the degree of departure."  United States v. Yates, 22 F.3d 981, 990 (10th Cir. 1994) (quoting United States v. Flinn, 987 F.2d 1497, 1502 (1993)).  The district court "may use any 'reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure,'" which includes using extrapolation from or analogy to the Guidelines.  United States v. Jackson, 921 F.2d 985, 989-90 (10th Cir. 1990) (quoting United States v. Harris, 907 F.2d 121, 124 (10th Cir. 1990)).  But see United States v. Sablan, 114 F.3d 913, 918-19 (9th Cir. 1997) (en banc) (holding that prior circuit caselaw requiring district courts to gauge the extent of a departure by drawing analogies to the Guidelines was overruled by Koon).

Here, the district court was explicit in its method of departure; it applied a sentence within the range that would have applied without the career offender enhancement. The court did so because it found that under the facts of this case, the career offender enhancement significantly overstated Collins's criminal past and likely criminal future and that a sentence within the range applicable without the career offender enhancement adequately reflected Collins's situation. We have previously held that a one-step departure out of the career offender category and application of a sentence within the otherwise applicable range is a reasonable means of departure. See Bowser, 941 F.2d at 1026. For this reason, we hold that the degree of departure in this case was reasonable.

The judgment of the district court is AFFIRMED.