**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**APR 17 2000**

**TENTH CIRCUIT**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BENJAMIN LEE DAVIS,

    Defendant-Appellant.

No. 99-2063
(District of New Mexico)
(D.C. No. CR-98-620-MV)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY,** Circuit Judges and **COOK**,[**] District Judge.

## I. INTRODUCTION

Defendant Benjamin Davis pleaded guilty to one count of assault with a dangerous weapon and one count of assault resulting in serious bodily injury. *See* 18 U.S.C. § 1153; 18 U.S.C. § 113(a)(3), (6). The district court imposed a five-

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

level upward departure pursuant to United States Sentencing Guidelines (U.S.S.G.) § 5K2.8.  Davis appeals the resulting sentence of sixty-three months imprisonment.  This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

II.  FACTS & PROCEDURAL HISTORY

Davis and his common-law wife, Rosemary Bordy, were driving home in Bordy's truck when Davis began drinking beer.  Bordy objected to Davis' drinking, and the two began to argue.  When Davis stopped at a bar to buy more beer, the argument escalated.  Davis later pulled over to the side of the road to urinate.  Bordy planned to wait for him inside the truck, but Davis instead pulled her out of the truck by her hair and began yelling at her and kicking and punching her.  He pushed her to the ground face down and pulled her arm behind her back.  She begged him to stop, but he continued to pull on her arm until her elbow fractured.  He then laughed as she screamed in pain, and he asked her if she liked it.  Bordy broke free and began to run away, but Davis struck her in the back of the head with a rock or a beer bottle and knocked her unconscious.

When Bordy regained consciousness, Davis was pulling her up the hill by her hair.  She grabbed at his hands and begged him to stop.  He then kicked her arm and told her she was stupid to run and that he was going to kill her.  Davis threw Bordy down next to the truck, broke a beer bottle and tried to put it in her

mouth. He sat on her chest, poured beer on her, and told her he would kill her if she did not drink beer. He punched her in the face with his closed fist and began to choke her. She struggled to escape, but he resumed kicking her in the chest. He told her that he would make her drink with him if he had to break every bone in her body. When he grabbed her other arm and began to bend it, she attempted to stop the abuse by agreeing to drink with him. She took sips of beer while sitting in the mud, but Davis kicked her arm with each sip and insisted she drink more. Bordy lost consciousness again. When she regained consciousness, Davis was swearing at her and threatening to cut out her "private parts" so that no other man could have her. He told her she belonged to him and that he would kill her if she ever tried to leave him. He cut her thighs with the bottle, kicked her in the groin area, and told her she was worthless and did not deserve to live. The assault consumed some two to three hours.

Davis eventually told Bordy to get back into the truck. As they drove away, he told her she had deserved the abuse and that she had made him abuse her. Bordy then convinced Davis to stop for gasoline. When they stopped, Bordy went into the store and asked the clerk to call the police and an ambulance. Davis became suspicious and fled the area on foot, but was eventually apprehended.

Bordy's injuries from this episode were extensive. She had multiple head contusions, multiple abrasions and contusions to her upper torso, and a laceration

on her scalp which required stitches. She had bruises on her neck consistent with attempted strangulation, and she had bruises and cuts in her pelvic area. Her elbow was dislocated and fractured and required surgery. Her injuries, especially to her arm, left her unable to work and with recurring pain. At the time of Davis' sentencing, Bordy was attending counseling for the emotional trauma resulting from Davis' abuse, and she continued to have nightmares about the abusive episode.

Davis was indicted on one court each of assault with a dangerous weapon, assault resulting in serious bodily injury, and kidnaping. *See* 18 U.S.C. §§ 1153, 113(a)(3), (6), 1201(a)(2). Pursuant to a plea agreement, Davis pleaded guilty to assault with a dangerous weapon and assault resulting in serious bodily injury, and the government agreed to dismiss the kidnaping count. As part of the agreement, the parties stipulated that Davis was entitled to receive a three-level reduction from his base offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. The plea agreement also indicated that the maximum statutory penalty for the assault crimes was ten years imprisonment plus fines and supervised release on each count. Finally, the plea agreement stated that the government would make no agreement regarding sentencing and that the sentencing court would have the option of departing upward.

Before application of the upward departure pursuant to U.S.S.G. § 5K2.8, Davis' sentence was calculated under the Sentencing Guidelines as follows: First, because the two counts to which Davis pleaded guilty involved the same victim and the same act or transaction, the two counts were grouped pursuant to U.S.S.G. § 3D1.2(a). Next, the aggravated assault guideline, U.S.S.G. § 2A2.2, provides a base offense level of fifteen for crimes in violation of 18 U.S.C. § 113(a)(3), (6). Additionally, the following specific offense characteristics were found to apply in this case: 1) a dangerous weapon was used and 2) the victim sustained serious bodily injury. *See* U.S.S.G. §§ 2A2.2(b)(2)(B), (b)(3)(B). Each of these specific offense characteristics required a four offense level increase, resulting in an offense level of twenty-three. *See id.* Finally, pursuant to the plea agreement, Davis' offense level was reduced by three points for acceptance of responsibility, leaving Davis with an offense level of twenty. Because Davis had previously been convicted of assault resulting in serious bodily injury, his criminal history category was two, which resulted in a sentencing range of thirty-seven to forty-six months.

A sentencing hearing was held on February 23, 1999. After adopting the factual findings of the Presentence Report (PSR) and calculating Davis' base offense level, the district court determined that a five-level upward departure for extreme conduct was appropriate in this case. *See* U.S.S.G. § 5K2.8. The five-

level upward departure increased the applicable sentencing range to sixty-three to seventy-eight months imprisonment.

Section 5K2.8 provides:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

In written findings the district court stated:

> The Court finds that the defendant's conduct was unusually heinous, cruel, brutal, and degrading to the victim based on the following: 1) The victim was cut in the pelvic area with broken bottles; 2) She was kicked and punched throughout her body for a prolonged period of time; 3) She suffered a laceration on her head as a result of an object thrown by the defendant and was knocked unconscious; 4) The victim suffered a fractured elbow caused by twisting of her arm and endured prolonged pain; 5) The victim was held captive for several hours and forced to drink beer; and 6) The defendant threatened to kill the victim.

> The degree of the departure is based on the following:

> The conduct in this case is more analogous to the guideline under section 2A4.1, Kidnaping, Abduction, Unlawful restraint, which incorporates assaultive behavior. Application of section 2A4.1 results in an offense level of twenty-five (25), after all adjustments are made.

The district court further explained the degree of departure at the sentencing hearing, stating:

The degree of departure is based upon the following: It is your second conviction for a similar charge which in my view exhibits little regard or respect for the law or for the pain inflicted on another human being. Further, the first conviction and the service of your sentence did not deter you from continued conduct, demonstrating a need to protect the public [from] further crimes by you.

In addition, the offense conduct involved extreme violence with no respect for human life or for the dignity of others.

Davis was ultimately sentenced to sixty-three months imprisonment on each count, each sentence to run concurrently, followed by three concurrent years of supervised release on each count. Davis was also ordered to pay $19,843.95 in restitution and a $200 assessment.

III. DISCUSSION:

A. Standard of Review

Davis argues the district court erred both in imposing an upward departure and in setting the degree of departure. In reviewing the district court's decision to depart from the Sentencing Guidelines, this court must evaluate:

(1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

*United States v. Collins*, 122 F.3d 1297, 1303 (10th Cir. 1997).

All four steps of our review are subject to a "unitary abuse of discretion standard," keeping in mind that "[a] district court by definition abuses its discretion when it makes an error of law." *Id*.; *United States v. Fagan*, 162 F.3d 1280, 1283 (10th Cir. 1998) (quotation omitted). The first part of our inquiry, whether a factor is a permissible basis for departure under any circumstances, is a question of law and we need not defer to the district court's resolution of this issue. *See Collins*, 122 F.3d at 1303. The second part of our inquiry, whether the factor removes the case from the applicable Guideline heartland, is a largely factual inquiry and this court must give substantial deference to the district court's resolution of this issue. *See id.* at 1302-03. For the third part of our inquiry, we review the factual determinations underlying the decision to depart for clear error. *See id*. at 1302. Finally, our review of the reasonableness of the degree of departure is deferential. *See United States v. Bartsma*, 198 F.3d 1191, 1196 (10th Cir. 1999).

B. First Inquiry: Permissible Departure Factors

Davis first argues that the district court relied on impermissible departure factors in imposing an upward departure. A sentencing court may depart from the applicable Sentencing Guidelines if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ."

18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0. If a factor is an encouraged factor for departure, then it is a permissible basis for departure unless it has already been taken into account by the applicable guideline, in which case it is a permissible basis for departure only when present to an exceptional degree. *See Koon v. United States*, 518 U.S. 81, 96 (1996); *see also* U.S.S.G. § 5K2.0. If a factor is not mentioned in the Guidelines, we must, "after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." *Koon*, 518 U.S. at 96 (quotation omitted) (citation omitted).

Davis argues that the six facts listed by the district court in support of its upward departure decision are impermissible "factors" because they were already taken into account in the aggravated assault guidelines, specifically in the offense characteristic guidelines for assault with a dangerous weapon and assault resulting in serious bodily injury.[1] *See* U.S.S.G. §§ 2A2.2(a), (b)(2)(B),

---

[1] Davis concedes that the district court's finding about the prolonged nature of the assault, and the resultant prolonging of Bordy's pain and humiliation, is not accounted for by the applicable guidelines. He argues instead that the two to three hours of abuse is not a sufficiently long time frame to constitute "extreme conduct" under U.S.S.G. § 5K2.8. In support of this argument, he cites several cases in which the imposition of an upward departure for extreme conduct was affirmed but, Davis argues, the facts were more egregious than those present here. *See United States v. Checora*, 175 F.3d 782 (10th Cir. 1999); *United States v. Morrison*, 153 F.3d 34 (2d Cir. 1998); *United States v. Bailey*, 112 F.3d 758 (4th

(b)(3)(B).  We assume *arguendo* that the six facts listed by the district court are the "factual circumstances supporting a departure,"[2] as contemplated by *Collins*. *See* 122 F.3d at 1303.  Nevertheless, if these are encouraged factors already taken into account by the applicable guidelines, we must still determine whether the factors are "present to an exceptional degree."  *Koon*, 518 U.S. at 96.  Because

---

Cir. 1997); *United States v. Johnson*, 56 F.3d 947 (8th Cir. 1995).

Davis may be attempting to argue that because his conduct was less extreme than that exhibited in these cases, his conduct falls within the heartland of aggravated assault cases.  *See infra* Section III.C.  This court notes, however, that the above cases cited by Davis do not concern the aggravated assault guidelines.  In other words, Davis does not argue that any of the cases he cites represent the minimum amount of "unusually heinous, cruel, brutal, or degrading" conduct which would take an *aggravated assault* case outside of the heartland of the *aggravated assault* guidelines.  These cases are therefore irrelevant to our "heartland" analysis.

Moreover, Davis does not contend that the length of the abuse is an impermissible factor for departure in this case.  Thus, even assuming, as he argues, that the prolonged nature of the abuse does not constitute "unusually heinous, cruel, brutal, or degrading" conduct under § 5K2.8, we must nevertheless decide whether the length of the abuse takes Davis' conduct outside the heartland of aggravated assault cases, whether the finding of prolonged abuse is supported by the record, and whether the particular degree of departure imposed is reasonable.

[2]The alternative approach would be to say that the six facts listed by the district court are not six independent "factors" supporting upward departure, but are simply facts listed by the district court *in support of* its specific finding that Davis' conduct was "unusually heinous, cruel, brutal, and degrading."  Under this alternative analysis, this court would then determine whether the encouraged factor of "extreme conduct" was already taken into account in the aggravated assault guidelines and, if so, whether it was present to an exceptional degree. U.S.S.G. § 5K2.8; *see United States v. Paster*, 173 F.3d 206, 217 (3d Cir. 1999); *Koon v. United States*, 518 U.S. 81, 96 (1996); *see also* U.S.S.G. § 5K2.0. Because Davis' argument fails under his own proposed analytical approach, however, this court expresses no opinion about which analytical mode is correct.

this analysis effectively overlaps with the heartland analysis, this court resolves that inquiry in the subsection of this opinion which follows. In other words, if this court concludes that the facts relied on by the district court demonstrate conduct which falls outside the heartland of aggravated assault cases, we necessarily decide the district court relied on permissible departure factors in departing.

Alternatively, if we view these six "factors" apart from the "extreme conduct" guideline and thus deem them factors unmentioned in the Guidelines, this court must then consider whether they are sufficient to take the case outside of the applicable guideline's heartland. *See id*.[3] Thus under either analysis, we now move to the second part of our inquiry.

C. Second Inquiry: Heartland Analysis

Davis similarly argues the district court erred in finding that his conduct fell outside the heartland of aggravated assault cases. Sentencing courts are "to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is

---

[3]Davis does not argue, nor does this court perceive, that the district court relied on discouraged factors for departure, such as a defendant's family ties and responsibilities. *See Koon*, 518 U.S. at 95; U.S.S.G. § 5H1.6.

warranted." U.S.S.G., Ch. 1, Pt. A, intro. comment 4(b). The district court here found that Davis' conduct was removed from the heartland of aggravated assault cases because of the six facts listed in its written findings, or because his conduct was "unusually heinous, cruel, brutal, and degrading" to Bordy. *See id*. § 5K2.8.

Davis argues that his case actually falls within the heartland of aggravated assault cases. In support of this argument, Davis cites cases in which, he contends, the defendants' actions were similar to his, yet an upward departure for extreme conduct either was not sought or was denied by the district court. *See United States v. Murray*, 82 F.3d 361 (10th Cir. 1996); *United States v. Tissnolthos*, 115 F.3d 759 (10th Cir. 1997); *United States v. Duran*, 127 F.3d 911 (10th Cir. 1997). In none of these cases was the failure to grant or the denial of an upward departure an issue on appeal. We therefore assume that Davis is citing these cases in order to alert this court to some similarity in conduct between these cases and the case at bar which would cause us to conclude that Davis' actions fall within the heartland of aggravated assault cases. Assuming *arguendo* that we would be willing to undertake such a comparative analysis, we nevertheless decline to do so in this case. Davis did not cite any of these cases to the district court, either in the sentencing hearing or in his Sentencing Memorandum. Because Davis failed to place before the district court the specific factual circumstances of these cases, thus depriving the district court the benefit of

comparison with the case at bar, he has waived the argument that this court should undertake such a comparison on appeal.

Additionally, whether the factual circumstances of a case make it atypical is a largely factual inquiry and this court's review of that inquiry is "at its most deferential." *Collins*, 122 F.3d at 1302. "District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." *Koon*, 518 U.S. at 98.

Given the facts of this case, this court is satisfied that the district court acted within its discretion in determining that Davis' conduct fell outside the heartland of aggravated assault cases. Davis assaulted Bordy for a period of one to three hours. During the assault, Bordy begged Davis to stop hurting her, but he responded by pulling on her arm until her elbow fractured. He laughed at her screams and asked her if she liked it. He poured beer on her, tried to put broken beer bottles in her mouth, and forced her to drink beer. When she finally gave in and drank, he responded by kicking her with every sip she took. He knocked her unconscious twice, once when she attempted to flee. He told her that she was stupid to run from him and threatened to kill her. He threatened to cut out her "private parts" so that no other man could have her, cut her thighs with a broken beer bottle, and told her she was worthless and did not deserve to live. These

actions both demonstrate a desire on Davis' part to hurt and humiliate Bordy for a prolonged period of time and constitute examples of gratuitous infliction of injury. The district court, therefore, did not abuse its discretion in finding the facts of this case fell outside the heartland of aggravated assault cases.

D. Fourth Inquiry: Reasonableness of the Degree of Departure[4]

Davis' final argument is that the degree of departure in this case, five levels, was unreasonable. In conducting our deferential review of this decision, this court examines the district court's stated reasons for the degree of departure, along with factors such as "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities." *Bartsma*, 198 F.3d at 1196 (quotation omitted).

In departing from the Sentencing Guidelines, a sentencing court must specifically articulate the reasons for the degree of departure, using any "reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure," including "extrapolation from or analogy to the

_____

[4]Davis does not argue the district court's findings of fact were clearly erroneous, nor is any such error apparent from the record. *See United States v. Collins*, 122 F.3d 1297, 1302-03 (10th Cir. 1997). The third branch of our analysis, record support for the factual circumstances underlying the departure, is therefore not an issue in this appeal. *See id*. at 1308 n.8.

Guidelines." *Collins*, 122 F.3d at 1309 (quotation omitted). In this case, the district court stated that the degree of departure was based on its conclusion that Davis' conduct was more analogous to the guideline for Kidnaping, Abduction, Unlawful Restraint, which incorporates assaultive behavior. *See* U.S.S.G. § 2A4.1. The district court further explained the degree of departure at the sentencing hearing, stating:

> It is your second conviction for a similar charge which in my view exhibits little regard or respect for the law or for the pain inflicted on another human being. Further, the first conviction and the service of your sentence did not deter you from continued conduct, demonstrating a need to protect the public [from] further crimes by you.
> In addition, the offense conduct involved extreme violence with no respect for human life or for the dignity of others.

Davis does not argue that the district court failed to specifically articulate the reasons for the degree of departure in this case. Nor does he argue that under no circumstances is it permissible for a district court to analogize to a guideline which would have applied to charges which were dismissed pursuant to a plea agreement. Davis' argument is rather that as applied in this case, the imposition of a five-level upward departure results in a lack of disparity between his sentence and one he could have received had he been convicted of kidnaping, and this lack of disparity distorts proportionality, a critical objective of the

Guidelines.[5] "A prime objective of the Sentencing Guidelines was to eliminate or, at least reduce, disparity in the sentencing of similarly situated defendants. . . . As a corollary of this guideline policy, however, the Commission recognized that defendants differently situated should suffer different sentences . . . ." *United States v. Paster*, 173 F.3d 206, 220 (3d Cir. 1999) (citations omitted).

The only case Davis cites in support of his proportionality argument is *United States v. Paster*, in which the defendant pleaded guilty to the second degree murder of his wife. *See id*. at 208-09. The applicable sentencing range for second degree murder was 108-135 months. *See id*. at 216. After the district court imposed a nine-level upward departure, however, the defendant was subject to an incarceration range of 292-365 months, and the district court sentenced the defendant to the maximum amount under that range. *See id*. at 210. Although the

---

[5]In arriving at Davis' sentence by analogy to the kidnaping, abduction, or unlawful restraint guideline, the district court must have made the following calculations: 1) The base offense level for that guideline is twenty-four; 2) because the victim sustained serious bodily injury, increase by two levels; 3) because a dangerous weapon was used, increase by two levels; 4) because Davis accepted responsibility for his crime, decrease by three levels. *See* U.S.S.G. §§ 2A4.1(a), (b)(2)(B), (b)(3), 3E1.1. These calculations result in an offense level of twenty-five, which, with Davis' criminal history category of two, results in a sentencing range of sixty-three to seventy-eight months. Therefore, Davis' argument that there is a lack of disparity between his sentence and one he could have received had he been convicted of kidnaping assumes that if he had been convicted of kidnaping, his sentence would nevertheless have been reduced for acceptance of responsibility.

Third Circuit affirmed the imposition of an upward departure, it remanded to the district court to reconsider the degree of departure. *See id*. at 221.

The *Paster* court expressed two concerns with the degree of departure imposed. The court's first concern was with the case-law methodology the district court used in arriving at the degree of departure. *See id*. The district court had surveyed cases in which an upward departure had been affirmed, specifically two cases which approved five-level upward departures, one which affirmed a ten-level upward departure, and one upholding an eleven-level upward departure. *See id*. at 219. "From these raw numbers ranging from five to eleven the District Court extrapolated nine." *Id*. The Third Circuit disapproved of this case law methodology because 1) the district court had merely cited the cases without analyzing the particular extreme conduct which supported the upward departures in each and 2) unlike *Paster*, the cases cited by the district court had relied in part on grounds of departure in addition to extreme conduct. *See id*. Because the degree of upward departure in this case was supported by an analogy to the Guidelines, rather than by extrapolation from other upward departure cases, the *Paster* court's first concern is inapplicable in this case.

The *Paster* court's second concern was the lack of disparity between the defendant's sentence for second degree murder with the upward departure and the Sentencing Guidelines' prescription for first degree murder. *See id*. at 220. The

court reasoned that the applicable Guideline range for a defendant guilty of first degree murder, with a two-point reduction for acceptance of responsibility, was 324-405 months, whereas the Guideline range for second-degree murder, with the same two-point reduction, was 108-135 months. *See id.* at 218 n.8.[6] Thus, Paster's 365-month sentence for second degree murder was the equivalent of a "heavy first degree murder sentence." *Id.* at 218; *see also id.* at 221. The *Paster* court concluded that such a result "distorts proportionality, a critical objective of the Sentencing Guidelines." *Id.* at 221; *see also* U.S.S.G. Ch. 1, Pt. A, intro. comment 3 ("Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity."). The Third Circuit thus remanded with directions to the district court to "reconsider" the nine-level upward departure.[7] *See Paster*, 173 F.3d at 221.

---

[6]The court also noted that in the colloquy about the plea agreement, the probation officer and the government had advised the district court that the defendant would likely face a sentencing range of 168-210 months. This range reflected a second degree murder sentence with a two-level upward enhancement. *See Paster*, 173 F.3d at 220.

[7]All three judges wrote separately on the issue, with the majority opinion only directing the district court to reconsider the degree of departure, one concurrence instructing the district court to reconsider the degree of departure "as long as it is understood that the District Court retains the discretion to depart upwards nine levels again should it fully explain why it determined to do so," and the third opinion directing the district court not to again impose a nine-level upward departure. *Paster*, 173 F.3d at 221, 225.

Although proportionality concerns are arguably present to some degree in this case, they need not trouble us to as great an extent as in *Paster*. Unlike the defendant in *Paster*, Davis received a five rather than nine-level upward departure. Additionally, the upward departure in this case resulted in an increase in sentence of seventeen, rather than 230, months.[8] Also, in reviewing the reasonableness of the degree of an upward departure, this court must consider not only proportionality but also factors such as deterrence and protection of the public. *See Collins*, 122 F.3d at 1308-09. As stated by the district court at Davis' sentencing hearing, the need to protect the public and the need to deter Davis, who had previously been convicted of an assault causing serious bodily injury, supports a five-level upward departure in this case. Especially in light of these additional considerations, the proportionality concerns in this case do not render the degree of departure unreasonable.

Davis also argues that the upward departure imposed in this case deprived him of the benefit of his plea bargain. First, this court notes that the heart of this argument is essentially the same as the argument that there is a lack of disparity between Davis' sentence and one he could have received had he been convicted of

---

[8]These figures were arrived at by subtracting the defendant's maximum possible sentence under the pre-upward departure Guideline range from the actual sentence given after the upward departure was imposed (63-46 = 17 months; 365-135 = 230 months).

-19-

kidnaping, and we have determined that any lack of disparity does not render the degree of departure unreasonable in this case. Moreover, we note that the plea agreement which Davis signed indicated that the statutory maximum for the crimes to which he was pleading was ten years each. The agreement also indicated that the government did not agree to a specific sentence and that the district court had the ability to depart from the Guideline range. We also note that absent any downward adjustments, Davis' base offense level had he been convicted of kidnaping after a trial would have been twenty-eight, resulting in a sentencing range of 87-108 months. *See* U.S.S.G. §§ 2A4.1(a), (b)(2)(B), (b)(3). Although a downward adjustment for acceptance of responsibility is not absolutely precluded when a defendant goes to trial, the circumstances in which a defendant may demonstrate an acceptance of responsibility after exercising his right to trial are rare. *See id.* at § 3E1.1, application note 2. Additionally, the district court in its discretion might have imposed some degree of upward departure, even had Davis been convicted of all the charges brought against him. The upward departure imposed in this case therefore did not deprive Davis of the benefit of his plea agreement, and this court concludes that the degree of departure imposed in this case was reasonable.

IV. CONCLUSION

For all the reasons stated above, this court **AFFIRMS** the sentence imposed by the District Court for the District of New Mexico.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge